Stephen BECKER, Appellant,

v.

MISSOURI DEPARTMENT OF CORRECTIONS AND HUMAN SERVICES, Respondent.

No. 55623.

Missouri Court of Appeals, Eastern District, Division Six.

Oct. 17, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 15, 1989.

Steven Mark Davis, Hillsboro, for appellant.

Michael H. Finkelstein, Sp. Asst. Gen. and Chief Counsel, Dept. of Corrections, Anthony M. Gawienowski, Deputy Counsel, Jefferson City, for respondent.

SIMEONE, Senior Judge.

This is an appeal by appellant, Stephen Becker, from an order of the circuit court of Jefferson County which affirmed a decision of the Personnel Advisory Board which, in turn, approved the action of the Division of Adult Institutions of the Department of Corrections and Human Services dismissing appellant from employment as a corrections officer. We affirm.

Pursuant to § 36.380, R.S.Mo., 1986, appellant Becker was dismissed from his employment for the good of the service and because, in violation of the rules and regulations of the Department, he fraternized with a female resident inmate, Karen Marlatt McMurran, at various times and places.

On June 4, 1986, a disciplinary hearing was held by the "Disciplinary Review Board"[1] of the Division of Adult Institutions and on July 21, 1986, Becker was notified by letter that he was dismissed as an employee as of the close of business on August 7, 1986. Sometime after August 7, the date of Becker's dismissal, Becker applied for and received unemployment compensation benefits from the Division of Employment Security. An appeal was taken by the Division of Adult Institutions. On October 31, 1986, the Appeals Tribunal found that Becker worked as a correctional officer for several years prior to August 7, 1986, and "he was then discharged for harassment of a female resident of the institution." The Appeals Tribunal found that Becker was eligible for benefits because he was not "discharged for misconduct connected with his work." Misconduct connected with work means "an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standards of behavior ... or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design,...." The Appeals Tribunal found that Becker was discharged for harassment of one of the residents, and that this was not considered to be "misconduct connected with his work."

On September 2, 1986, Becker filed an application for appeal of his dismissal as a corrections officer with the Personnel Advisory Board, pursuant to § 36.390, R.S. Mo., 1986. On January 21, 22 and March 25 and 26, 1987, an administrative hearing was held at which evidence was taken before a hearings officer. On April 17, 1987, the Personnel Advisory Board approved appellant's dismissal. On May 15, 1987, appellant appealed to the circuit court of Jefferson County which affirmed the decision of the Personnel Advisory Board.

At the commencement of the administrative hearing on January 21, 1987, counsel for Becker informed the hearing officer that he subpoenaed certain work release contracts and certain sign-in sign-out sheets concerning Karen Marlatt and the Division had not turned them over. Counsel for Becker requested a continuance to seek a court order to produce them. The contracts and sign-in, and sign-out sheets, at the time, were in the hands of the Division of Parole. The hearing officer doubted the materiality and relevance of the documents and denied the continuance, and proceeded to hear the cause.

The evidence at the administrative hearing was conflicting, but the hearings officer could reasonably find the following.

Mr. Becker was employed in February, 1984 by the Division of Adult Institutions of the Department of Corrections as a Corrections Officer I at St. Mary's Honor Center located in the City of St. Louis. His duties consisted, among other matters, of maintaining security at the institution and dealing with work release and school contracts. Ms. Karen Marlatt, who, at the time of the hearing was married to Thomas McMurran, was an inmate at the honor center, having previously been convicted of the sale of controlled substances. In an honor center, an inmate has already received a conditional release date before being transferred there. At the center inmates are given certain privileges. They are allowed to work, go to school, associate with their family and make use of passes. Becker, as a corrections officer at the center, had supervision over Karen McMurran. They met at the center about September, 1985. Karen was employed and went to Meramec Community College.

In late November or early December, 1985, Karen and Carolyn Dawson, another corrections officer at the center, were having a conversation in the annex of the center about "trying to find some bicycles for Christmas presents" for Karen's chil-

---

1. Sometimes referred to as the "Adjustment Advisory Board."

dren, when Becker came into the room. Becker indicated that he knew where Karen could get some bicycles at a modest price and volunteered to get bicycles for Karen. Then "a couple of weeks" before Christmas, Becker told Karen that he had the bicycles and Karen told him to deliver them to her father's house. In mid-December, Becker and Karen delivered the bicycles to Karen's father's home, and Karen paid him some $70 for them. Karen's father, Marty Sweazea, and her stepmother, Marilyn Sweazea, were home. The father and stepmother testified that Karen and Becker came to the home, and Karen paid him.

Afterwards, and for a period of time— December until February, 1986, Karen had about six "dates" with Becker. He asked her to go out with him before Christmas. She went out with him on New Year's Eve, 1985. They met at a local bar, while Karen was on a 52–hour pass and they first went to Becker's mother's home in Arnold. Karen described the home in some detail. There they watched television and then went to the house of a friend. Then they went to a Ramada Inn off I–55, spent the night together, and engaged in sexual relations. They left the motel sometime in the afternoon of January 1, 1986. In February, 1986, they went to a concert together. Karen testified that although Becker requested it, she never had sex with him after the New Year's Eve incident. He "kept trying to get me to go out with him and I'd tell him no." He kept "talking about getting me rolled back," meaning sent back to prison. Karen testified she was threatened by Becker after the New Year's Eve incident in person and by telephone. He would call her parents' house and work. Karen's father testified that he received a few phone calls asking for Karen. After the New Year's Eve incident, Becker would ask her to go out about three times a week, and when Becker would ask her to go out, she told him that "I just didn't think that was possible."

In May, 1986, Karen was working at the Carroll Distributing Company. The owner is Thomas Carroll. He testified that his supervisors in the company told him that Karen was receiving phone calls and that she was "quite distressed," so that her work suffered. On May 21, 1986, she received a phone call, and Mr. Carroll put the call on a speaker phone. The caller, identified by Karen as Becker, used graphic language, and made "veiled threats" against Karen. Mr. Carroll then called Terrence Lee, the liaison representative from the Honor Center, and thereafter officers went to Carroll's to get Karen and an investigation was begun. Mr. Carroll's call to Lee triggered an investigation. Karen was interviewed. Lee spoke to Karen who told him that she was being threatened by Becker. Lee went to his supervisor, Helen Marberry, who spoke with Karen, and Lt. Lewis Baring, at the time, the investigator for the institution and informed them of the situation. Lee reported the incident to Captain Oliver, the then chief of custody, and to the superintendent. Baring began to investigate the whole affair thoroughly. It was found that Karen had Becker's home telephone number. Lt. Baring interviewed Karen and she gave a lengthy statement, about the various incidents including spending the night at the motel on New Year's Eve.

On May 22, 1986, Becker was placed on administrative leave and given a letter listing the personnel of a "disciplinary review board." This board was to make a recommendation of Becker's employment status. The letter indicated that, in addition to others, Eugene Anthony, and Betty Wehmeyer were to serve on the Board. Sometime later, Lt. Baring, Captain Oliver, Karen and Betty Wehmeyer, the records-custodian of the honor center, looked and finally found the motel Karen described. Karen had identified landmarks around the motel and the interior of the room. Lt. Baring obtained the registration card of the motel showing Becker's name, address and place of employment. Karen also described Becker's mother's home and the investigators went there and took pictures of the home. Then Lt. Baring prepared an investigation report.

At the administrative hearing, Michael Bowersox, the assistant superintendent of

the honor center, testified concerning the Division's policies, which "prohibit non-professional contact between employees and inmates." The purpose of such a policy is to facilitate the "custodial and rehabilitative structure that a correctional agency establishes and maintains." Bowersox stated that the reason for an investigation of Becker was the "contact with an inmate and specifically a sexual contact." He denied that the reason for the Becker investigation was because he was "a union member." William Johnson, a representative of the Department of Corrections also testified concerning the policies.

The thrust of Becker's defense was that Karen had violated rules concerning her work release contract and her school contract by coming back to the center late or not informing officials where she was, and was "manipulating" the situation by making these allegations against Becker who had determined that violations were occurring. By making these allegations, Becker contended, Karen was getting special treatment and an alleged promise of immunity. Becker's defense also contended that Captain Oliver showed animosity toward him by calling him a "union man," and that Oliver said "we've got him now." William Anselman, a corrections officer at the center testified that Captain Oliver referred to Becker as that "union man." Witnesses for Becker testified that Becker was examining possible violations by Karen of her work and school contracts and her sign-in and sign-out sheets. Witnesses also testified that despite certain violations, no action was taken against Karen because it might affect the investigation and the investigators wanted to keep the lines of communication open. Becker also contended that Karen was given immunity, but this was denied by several witnesses.

Mr. Becker testified before the hearing officer. He denied all the allegations or charges made by Karen. He denied that he went to the motel with Karen, denied he purchased any bicycles, denied that Karen gave him any money for the bicycles, denied he delivered bicycles to Karen's parents, denied he called her at places of employment, and denied he took Karen to his mother's house. He admitted going to the motel on New Year's Eve, but stated he went there with Kimberly Boesing, not Karen. He testified that in May, he confronted Karen with the violations of her work release and school contracts and violations of sign-in and sign-out.

Kimberly Boesing corroborated Becker's testimony concerning the motel by testifying that it was she who spent New Year's Eve with him.

Based upon the above evidence, the Personnel Advisory Board on April 17, 1987, made findings of fact and concluded that Becker's dismissal by the Division was approved. The circuit court affirmed.

On this appeal, appellant Becker contends that (1) the approval of the Personnel Advisory Board is unauthorized because the Division of Adult Institutions is estopped from proceeding for the reason that the Appeals Tribunal of the Division of Employment Security found, on October 31, 1986, that appellant was not discharged for "misconduct connected with his work," (2) he was not afforded an impartial tribunal in that the disciplinary review board established to investigate and recommend action was not an impartial tribunal, thus he was denied due process and that the disciplinary review board violated the procedures and regulations outlined by the Division of Adult Services, and (3) the hearing officer erred in denying a motion for continuance in order for him to obtain access to the work release and school records and the sign-in and sign-out sheets.

■■■ In this administrative proceeding, our review is limited and this court must review the decision of the Board and affirm that decision if it is supported by competent and substantial evidence on the whole record. The evidence must be substantial in the sense that it supports the discretionary determination of the Board. Furthermore, the evidence is to be considered in a light most favorable to the administrative agency, together with all reasonable inferences which support it, and if the evidence would support either of two findings, the court is bound by the administrative deter-

mination. *Morris v. Division of Probation and Parole,* 651 S.W.2d 545, 546 (Mo.App. 1983). Furthermore, on appeal from a decision of the circuit court affirming an administrative decision, the court of appeals reviews the decision of the agency and not the judgment of the circuit court. *Reed v. City of Springfield,* 758 S.W.2d 138, 146 (Mo.App.1988); *Rockenfield v. Missouri Dept. of Corrections and Human Resources,* 740 S.W.2d 230, 231 (Mo.App. 1987).

■ In his first point, appellant relies upon *Bresnahan v. May Department Stores Company,* 726 S.W.2d 327 (Mo. banc 1987).[2] In *Bresnahan,* the Supreme Court recognized that a prior adjudication of an issue of fact by an administrative tribunal could be invoked as collateral estoppel in a subsequent judicial proceeding. But that is not the situation here. Becker was notified of his dismissal on July 21, 1986, effective August 7, 1986, and this dismissal was appealed on September 2, 1986, and proceeded to the Personnel Advisory Board.

Appellant's first point is ruled by *Gerig v. Bd. of Educ. of Cent. School D.,* 767 S.W.2d 586 (Mo.App.1988). In *Gerig,* appellant's employment was terminated by the board of education for immoral conduct. He appealed to the circuit court. While the appeal was under submission, Gerig filed a claim for unemployment benefits. The Commission found that Gerig was discharged for misconduct connected with his work, but made no findings that his conduct was immoral. The school board filed a motion for summary judgment on the basis that the decision of the Commission estops Gerig from relitigating fact issues. The court held that the determination of the Commission was not a prior adjudication because the decision of the school board predated the action of Labor and Industrial Relations Commission and because an appeal was pending when the Commission's decision was made. So it is here. The decision to dismiss Becker was made prior to the findings and conclusions of the Appeals Tribunal of the Division of Employment Security made on October 31, 1986.

Neither the Personnel Advisory Board or the Division of Adult Institutions is collaterally estopped from proceeding with the disciplinary action.

As to appellant's various points that the disciplinary review board of the Division was unlawful because it was not an impartial tribunal, and engaged in unlawful procedures and in violation of regulations concerning employee discipline, we find them to be without merit.

Appellant argues the disciplinary review board was unlawful because certain persons were on the board who had "participated" in the investigation and hence were allegedly not impartial. He also argues that the procedures of the personnel manual were violated when Captain Oliver, the then chief of security wrote an adverse investigation report, when he was "far from impartial" because he had an animosity towards appellant because of his union activities.

■ While it is true, as appellant argues, that an agency may not combine the investigative and judicial functions in a decision-maker who has a pecuniary interest in the outcome or some other bias, *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), there is no substantial evidence that certain members of the "disciplinary review board" so participated in the investigation so that such participation constituted bias or prejudice. Ms. Wehmeyer, for example, merely went with Lt. Baring and others to attempt to locate the motel where Karen and Becker allegedly stayed on New Year's Eve. While the name of Eugene Anthony, a corrections officer was mentioned by some of appellant's witnesses, there is no substantial evidence that he participated in the investigation. Lt. Baring was the one who primarily investigated the circumstances. While Captain Oliver assisted Lt. Baring, the

2. *Bresnahan* was overruled by § 288.215.1, effective March 1, 1988, R.S.Mo.Supp.1988. *See*

*Reed v. City of Springfield, supra,* 758 S.W.2d at 139.

record does not show that he was on the review board.

 In any event, our review of the facts and circumstances is a review of the action of the Personnel Advisory Board, which has the authority to "render decisions on appeals" as provided in §§ 36.060 and 36.390.5, R.S.Mo.1986. Our review is severely limited in scope. The review by the courts is limited to whether the action of the agency: (1) is in violation of constitutional provisions; (2) is in excess of the statutory authority or jurisdiction of the agency; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is arbitrary, capricious or unreasonable; or (6) involves an abuse of discretion. The role of the court is not to find facts but determine whether or not there was substantial evidence to support the facts of the Personnel Advisory Board found on the record. *Gerig, supra,* 767 S.W.2d at 588; § 536.140, R.S.Mo.1986.

Furthermore, any irregularities in procedure could have been called to the attention of the circuit court which, pursuant to § 536.140.4, provides that the court may hear and consider evidence of alleged irregularities in procedure or of unfairness not shown in the record. This was not done.

The record does not contain substantial evidence to show prejudicial irregularities. The Personnel Advisory Board found that all procedural due process requirements were fulfilled, and in considering the record, we agree.

Finally, appellant contends that the hearing examiner, in denying appellant's motion for a continuance and in refusing appellant access to the work release records and the sign-in and sign-out sheets was arbitrary to a degree so as to deprive him of due process.

 It has been held in numerous decisions, and analogously in administrative hearings, that a continuance rests in the hearing officer's discretion. 2 Am.Jur.2d *Administrative Law,* § 426 at 236 (1962). That discretion is a broad one and the appellate court will give every possible intendment to the decision of the officer and such ruling will not be set aside unless it is shown that the denial of a continuance is abused by an arbitrary or capricious ruling. *Cf., Missouri Public Service Co. v. Argenbright,* 457 S.W.2d 777, 785 (Mo.1970).

 The hearing officer here denied the motion because the hearing officer doubted the relevancy of the work release records and sign-in and sign-out records. We find no abuse of discretion. The appellant extensively cross-examined witnesses concerning the sought-for records, and brought out sufficient information to attempt to show that Karen was trying to retaliate against Becker for any violations she may have broken.

We have examined the entire record, and the authorities relied upon by appellant and find no error.

The proceedings culminating in appellant's dismissal were based upon substantial and competent evidence. The judgment is affirmed.

Judgment affirmed.

GRIMM, P.J., and HAMILTON, J., concur.