819 P.2d 952

**Raymond Lawrence BILLS, Plaintiff–Appellee, Cross Appellant,**

v.

**ARIZONA STATE BOARD OF EDUCATION, Defendant–Appellant, Cross Appellee.**

**No. 1 CA–CV 89–597.**

Court of Appeals of Arizona, Division 1, Department E.

Feb. 12, 1991.

Review Denied Nov. 5, 1991.*

* Moeller, J., of the Supreme Court, voted to grant review.

Grant Woods, Atty. Gen. by Linda S. Pavol, Asst. Atty. Gen., Phoenix, for defendant-appellant, cross appellee.

## OPINION

GERBER, Judge.

The Arizona State Board of Education (Board) appeals from the superior court's grant of summary judgment in favor of the plaintiff, Raymond Lawrence Bills (Bills). The superior court, pursuant to the Administrative Review Act, A.R.S. § 12–905(A), had reviewed the Board's decision to revoke Bills' principal's certificate. Plaintiff cross appeals with respect to attorneys' fees and raises two cross issues left unresolved by the trial court.

For reasons which follow, we reverse the trial court and reinstate the Board's decision. We also deny the plaintiff's motion for summary judgment with respect to the remaining issues. Since we reverse the trial court's decision, the plaintiff is no longer a prevailing party and, therefore, is not entitled to attorneys' fees.

### Factual and Procedural Background

Bills was principal of McNary Elementary School and that district's chief administrator from 1982–86. After he left that position, a complaint was filed against him on January 9, 1987, asking the State Board of Education to discipline him. The complaint outlined ten charges [1]. Pursuant to the Board's rules and regulations, a hearing by the Professional Practices Advisory Committee (Committee) was scheduled for March 31, 1987, for both parties to present their positions with respect to the charges. Bills received proper notice of this hearing.

The hearing was held as scheduled. The state presented twenty witnesses, each of whom was cross-examined by Bills. It did not rest its case until the second day at 6:00 p.m. At that point the Committee

Treon, Strick, Lucia & Aguirre by Anthony R. Lucia, Mark R. Jewett, Phoenix, for plaintiff-appellee, cross appellant.

---

**1.** Specific objections are made to only two of the ten charges by this appeal. All of the charges may be summarized as follows: that Bills (1) committed administrative neglect; (2) intimidated and harassed teachers and other staff; (3) inappropriately discussed his sex life with other employees during school hours; and (4) committed other acts of unprofessional conduct pursuant to A.R.S. § 15–203(A)(27).

asked Bills to present his case. Bills moved to continue the proceeding until the next day. His motion was denied by the Committee's chairman, who explained that problems in securing the premises for the next day and in coordinating everyone's schedules would make continuing the proceedings impossible. As an alternative, Bills then requested an hour break, which was granted.

Following the break, Bills addressed the substantive charges. He presented his case, which included two witnesses. He also testified on his own behalf and introduced sixty exhibits. Like all of the other witnesses, he was cross-examined by the opposing party as well as by the Committee members. After Bills rested, both sides presented closing arguments. At this time, approximately 1:30 a.m., the Committee began deliberations. They discussed and voted on each charge, concluding with a recommendation to revoke Bills' principal's certificate. The hearing finally adjourned at 3:31 a.m.

On May 26, 1987, after considering the Committee's record, findings of facts, and recommendations, the Board revoked Bills' principal's certificate.

After an unsuccessful motion for rehearing, Bills appealed this decision to the superior court, pursuant to A.R.S. § 12–905(A). He argued that the Committee deprived him of due process by denying his motion to continue and proceeding with the hearings late into the night. He further argued (1) that the record did not support the Committee's finding of "unprofessional conduct," and (2) that the Committee charged him with failure to fulfill responsibilities reserved to superintendents, not principals. The superior court, hearing this matter as a motion for summary judgment, held that Bills was deprived of due process, apparently because of the late hour of his presentation and the deliberations. The superior court reversed the Board's decision and ordered a new hearing before the Committee. The court also awarded Bills attorneys' fees of $4,425.24.

Because of its disposition, the court did not reach the other issues raised by Bills.

The court denied the Board's motion for a new trial. The Board appeals from this decision. Bills cross appeals on the issue of attorneys' fees and raises as cross issues the two issues left unresolved by the trial court. Exhaustion of administrative review is not raised by either party. Thus, the issues before us are as follows:

1. Whether the superior court erred in holding that the committee hearing was a denial of Bills' due process because of the lateness of the hour and length of the hearing day.
2. Whether the committee used an improper definition of "unprofessional conduct."
3. Whether the committee revoked Bills' principal's certificate for a failure to perform superintendent responsibilities.

### Discussion

An administrative decision may be appealed to the superior court. A.R.S. § 12–905(A). While that court shall consider all questions of law and fact, generally "[n]o new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency shall be heard by the court." *Id.* Therefore, the trial court's review is limited to whether the agency acted "arbitrarily, capriciously or in abuse of its discretion." *Sanders v. Novick*, 151 Ariz. 606, 608, 729 P.2d 960, 962 (App.1986). Our standard in this court is similar. "On appeal this court must determine whether the record contains evidence to support the trial court's judgment and in so doing reach the underlying question of whether the administrative agency acted arbitrarily, capriciously, or in abuse of its discretion." *Id.*

### 1. *Due Process Issue*

Bills argues that he was denied due process because of the late hour for the presentation of his case and the Committee's deliberations. Bills asserts that he, his witnesses, and the Committee members were exhausted and unable to do a thorough job at such a late hour. Bills made the one motion mentioned above to continue the proceedings to the next day. No

other motions were made, nor does the record reflect either an inability or difficulty on anyone's part to concentrate during the late hour proceedings.

This court faced a similar issue in *East Camelback Homeowners Ass'n v. Arizona Foundation for Neurology and Psychiatry*, 18 Ariz.App. 121, 500 P.2d 906 (1972). That case involved a zoning board hearing where one of the parties moved twice for a continuance, in part because of the lateness of the hour.[2] On appeal, the court held that "motions for continuance are directed to the sound discretion of the tribunal to which they are directed and rulings on such continuances will not be disturbed on appeal in the absence of clear abuse of that discretion." *Id.* at 128, 500 P.2d at 913 (citations omitted). A clear abuse of discretion is premised upon "a showing of prejudice resulting from the exercise of that discretion." *Id.* (citations omitted).

Our review of the record reveals that here, as in *East Camelback*, Bills "failed to show how the lateness of the hour in any manner prejudiced [his] presentation." *Id.* The Committee explained to Bills why a continuance could not be granted. After this decision, Bills' request for an hour break was granted. Unlike in *East Camelback*, Bills did not move again for a continuance or enter a protest on the record; rather, he seemed satisfied by the hour break.[3] His witnesses testified fully. Bills himself testified at great length and introduced many exhibits on his behalf. Despite the late hour, the Committee appears to have deliberated in detail as to each of the charges against Bills. The record does not indicate that Bills, his witnesses, or the Committee members were in any way exhausted or unable to perform their duties. The Committee reviewed each of the charges against Bills, amending two of them and dismissing three others only after much discussion.

■ The record indicates that Bills suffered no prejudice as a result of the late hour. Accordingly, we hold that the Committee's hearing did not deprive him of due process. We are aware of the potential for abuse in hearings held at late hours. We are averse to directing administrative agencies as to the specific time, manner, and duration of their hearings; such late night hearings do run the risks complained of in this case. In reaffirming the standard articulated by this court in *East Camelback*, we reiterate that a violation of due process for late hour proceedings requires a showing of prejudice in the record. Without such a showing, the mere fact that an administrative hearing extends well into the night, standing alone, remains insufficient to show a violation of due process. Accordingly, we reverse the superior court's finding of a due process violation.

## 2. *The Substantive Issues*

Bills further argues that this court should affirm the trial court's grant of summary judgment by deciding in his favor the issues left unresolved by the trial court. Bills appealed three issues to the trial court. That court considered only the due process question discussed above. Since we reverse on that issue, we now must resolve the two remaining questions left untouched by the superior court.

■ Preliminarily, we consider two matters. First, the Board argues, citing *Pritchard v. State*, 163 Ariz. 427, 788 P.2d 1178 (1990), that Bills waived these substantive issues because he failed to file a cross appeal as to them. Whether a cross appeal should have been filed is determined by this court's decision in *Bowman v. Board of Regents*, 162 Ariz. 551, 785 P.2d 71 (App.1989). *See also Exodyne Properties v. City of Phoenix*, 165 Ariz. 373, 378, 798 P.2d 1382, 1387 (App.1990). *Bowman* establishes a three-prong test to determine whether a formal cross appeal must be filed or whether the issue can simply be raised as a cross issue:

In the absence of a cross-appeal, an appellee may raise a cross-issue in its an-

---

2. In *East Camelback*, the homeowners association moved for a continuance at 11:30 p.m. and again at 12:30 a.m. Both motions were denied, and the hearing did not conclude until 3:00 a.m.

3. After his request for a continuance was denied, Bills responded to the Committee: "Well, I am quite tired after 20 witnesses in a row, and I would like a break. That's all I am asking."

swering brief only when it meets these criteria:

(1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds that would attack the judgment;

(2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, whether or not the trial court ultimately rejected or simply ignored the issue in any disposition; and

(3) The cross-issue must not result in an enlargment of appellee's rights or a lessening of appellant's rights on appeal.

162 Ariz. at 559, 785 P.2d at 79.

[4] In the present matter, this test is satisfied. The two cross issues both support the trial court's judgment; Bills' motion for summary judgment indicates that the superior court considered these issues, even if it failed to resolve them; and these issues neither enlarge Bills' rights nor lessen the rights of the Board. Therefore, Bills need not have filed a formal cross appeal in order for us to consider these issues.

Rather than remand the remaining issues to the trial court, we will dispose of them through summary judgment because there are no genuine issues as to any material facts, but only questions of law which we are able to resolve by statutory interpretation.

a. Whether the Committee used an improper definition of unprofessional conduct.

■ Amended charge number ten against Bills found "evidence of unprofessional conduct on the part of ... Bills, in violation of A.R.S. § 15–203(A)(27)." This finding was based upon the accumulation of evidence which indicated that Bills had acted "unprofessionally." Bills argues that any finding of unprofessional conduct must be premised upon the Code of Ethics of the American Association of School Administrators' (A.A.S.A.) definition, which involves dishonesty or a lack of integrity. Bills argues that the record does not support such a finding.

The Board argues that it need only use the A.A.S.A. definition if it needs assistance in coming to the conclusion that certain acts constitute unprofessional conduct. The Board also argues that the accumulation of findings against Bills nevertheless supports a finding of a lack of integrity and therefore amounts to unprofessional conduct.

No Arizona court has defined "unprofessional conduct" in this context, nor do we see a need to do so here, particularly because of the difficulty in defining such a standard for radically differing professions. The Board members undoubtedly have more sensitivity to this concept in the education field than we do. We believe that the Committee's conclusions support a finding of Bills' "lack of integrity" which is at least part of unprofessionalism. The record indicates that, among other examples, he harassed other teachers and staff members, removed confidential files, and inappropriately discussed his sex life with other employees during school hours. Based upon these findings, all supported in the record, the Committee could conclude that Bills exhibited a "lack of integrity" and that his conduct, therefore, was "unprofessional" within the meaning of A.R.S. § 15–203(A)(27). As to this issue, therefore, summary judgment should be entered in favor of the Board.

b. Whether the Committee revoked Bills' principal's certificate for a failure to perform superintendent responsibilities.

■ Bills next argues that the Committee revoked his principal's certificate for failure to perform superintendent duties. Specifically, Bills asserts that charges I and VII relate to duties performed by superintendents, not principals. Bills argues that he should not be disciplined for a failure to carry out duties reserved for superintendents because he does not have a superintendent's certificate. The Board argues that Bills, who served not only as principal but, pursuant to A.R.S. § 15–503(A), also as chief administrator, is responsible for carrying out duties otherwise reserved for superintendents.

We note initially that Bills' argument with respect to charge VII is moot because that charge was dismissed by the Committee. On the first charge,[4] even though the language of the statute clearly vests the superintendent with the responsibilities mentioned, *see* A.R.S. § 15–481(B), no Arizona court has considered whether the principal, as the district's chief administrator, must perform these duties in the absence of a superintendent. Nevertheless, since Arizona does provide the opportunity for very small school districts to hire a principal as the chief administrator, such responsibilities as a matter of law fall upon the principal in those circumstances. Therefore, summary judgment should be entered in favor of the Board on this issue as well.

### 3. *Attorneys' Fees*

The trial court awarded Bills attorneys' fees in the amount of $4,425.24, plus costs of $45.00 and 10% interest per annum. Bills requested those fees pursuant to both A.R.S. §§ 12–348(A)(2) and 12–341.01. However, since we resolve this matter in favor of the Board, Bills is no longer a prevailing party and is not entitled to recover attorneys' fees.

### Conclusion

We hold that because the record fails to indicate any prejudice to Bills caused by the late hour of case presentation and Committee deliberations, Bills was not denied due process. The record is replete with evidence which supports the Committee's finding that Bills engaged in "unprofessional conduct" pursuant to A.R.S. § 15–203(A)(27). Additionally, because Bills was not only the principal but also the chief administrator in a school district that did not need to hire a superintendent under A.R.S. § 15–503(A), the Committee could find that Bills failed to perform responsibilities otherwise reserved for superintend-

---

**4.** Charge I provides that:

Respondent has failed to insure that as of the close of the 1984–85 school year the district is in compliance with the requirements of the uniform system of financial records prescribed in Title 15, Article 4, A.R.S. to the extent that accounting records were inade-

ents. We reverse the superior court's decision and enter summary judgment with respect to the remaining issues in favor of the Board.

REVERSED.

SHELLEY, Acting P.J., and EHRLICH, J., concur.

quate and substantial charges were recommended to correct the serious weaknesses noted by the Auditor General's staff in its 1985–86 review of the McNary Elementary School District for the year ending June 30, 1985.