Lisle H. **MOORE**, Jr., Respondent,

v.

**BOARD OF EDUCATION OF FULTON PUBLIC SCHOOL NO. 58,**
Appellant.

No. 74255.

Supreme Court of Missouri,
En Banc.

July 21, 1992.
Rehearing Denied Sept. 22, 1992.

Thomas A. Mickes, Timothy J. Sarsfeld, St. Louis, Thomas Dunlap, Fulton, for appellant.

Janice A. Harder, Columbia, John W. Inglish, Jefferson City, for respondent.

THOMAS, Judge.

The Board of Education of the Fulton Public School District terminated the contract of Lisle H. Moore, Jr., a permanent teacher in the School District. The trial court reversed the Board's decision, finding the Board abused its discretion and violated Moore's due process rights by failing to grant a continuance during the night of the hearing. The Board argues the refusal to grant the continuance was not an abuse of discretion and, in any event, Moore waived any due process violation which might have

been committed by leaving the hearing before its completion.

Moore was a tenured, permanent teacher under an indefinite employment contract with the Fulton School District as defined by sections 168.104(4) and 168.106, RSMo 1986. On May 19, 1989, Fulton School District Superintendent, Dennis Lea, served Moore with a warning letter setting forth numerous deficiencies in Moore's job performance. On February 8, 1990, Lea served Moore with a Statement of Charges, including the following: (1) insubordination; (2) intentional violation of Board policy; (3) persistent violation of Board policy; (4) failure to comply with Board policy; and (5) immoral conduct. The Statement of Charges consisted of thirty-seven pages with more than 150 specific charges.

Pursuant to section 168.116, RSMo 1986, Moore requested a hearing before the Board to contest the charges. The Missouri Teacher Tenure Act, §§ 168.102–168.-130, RSMo 1986, requires the Board to schedule a hearing no later than thirty days after service of the charges. The hearing was originally set for March 8, 1990, but Moore requested a continuance. The Board rescheduled the hearing for the evening of March 19, 1990.

The hearing began at 7:05 p.m. At that time, the President of the Board asked for everyone's cooperation and said, "It's very important that all board members get a chance to hear the full testimony of all the witnesses. We're going to try and get through this entire hearing in one night. It's going to be a long one, so please remain very quiet." The School District's evidence began with the direct examination of Mr. Moore. With the exception of a recess from 9:00 to 9:10 p.m., Moore's testimony, including direct and cross examination, continued until 10:25 p.m. At 10:50 p.m., the Board called two student witnesses and, upon Moore's request, Moore was allowed to call five student witnesses out of order so they could be excused. Next, the principal of the school testified on direct examination from 12:00 a.m. until 2:15 a.m. with a break between 1:25 a.m. to 1:45 a.m. After direct examination of the principal, Moore's counsel requested that the Board continue the hearing until a later date. At this time, the following exchange took place between Mr. Mickes, counsel for the Board, Mr. Inglish and Ms. Harder, Moore's attorneys, and Mr. Borage, the Board President: .

MR. INGLISH: Mr. President, my name is John Inglish. I'm one of the attorneys for Mr. Moore, and at this point we would respectfully request that the board continue this hearing until some later date.

MR. MICKES: Mr. Chairman, the problem that we have in the time situation is that we are approaching board elections, and we have to have the same board hear the case as renders a decision. We've got a 10–day delay on getting the transcript back, and then we have seven days for the board to meet and consider it.

We're frankly running out of time, and we're in this position because plaintiff's counsel requested a continuance in order to get prepared, and so we're kind of in this box now because of that request and I would, appreciating the late hour of this hearing, I've certainly done them a lot later in the evening, I would suggest that we continue to proceed and cover as much ground, if not all the ground, as we can.

MR. BORAGE: I recommend we proceed.

MR. INGLISH: Is that the board's decision, that you're going to proceed tonight?

MR. BORAGE: Yes.

MR. INGLISH: Mr. President, equally respectfully, I would like the record to reflect that this hearing commenced at 7:00 this evening, that we have approximately 20 witnesses out here sequestered in a room, that the district has had until what is now 2:15 a.m., and still has not completed its case, and that it is unreasonable to expect Mr. Moore to commence sometime here 3:00 or 4:00 o'clock in the morning to present his defense of these charges, and if the board has finally made its decision, then

we object to that decision on the grounds that we would be denied due process under the state constitution and under the fifth and fourteenth amendments to the Constitution of the United States.

The hearing procedures set out in the Teacher Tenure Act presuppose due process of law, and we feel that we would be denied that due process if we are required to continue this hearing tonight, and we will not do so.

MR. MICKES: Mr. Chairman, I will state with equal respectfulness, if we had not granted counsel's request for a continuance, there would have been screams and hollers of failure to give them due process because they couldn't adequately prepare.

We consented to the continuance of this case to give them time to prepare for the case, and now when the time is completed to prepare the case, they are unable to proceed. So no matter what we do, we're going to be charged with violating due process. The witnesses are all here, I suspect that a good part of Mr. Moore's testimony has already been covered in direct and cross, and we've already had, I believe four or five of the witnesses.

Whether we're able to complete totally tonight or not, we certainly have time to complete a substantial part of the case so we don't wind up having to do this another night. It would be very, very difficult to be able to schedule another evening when we can do this and still meet the framework and the time schedules of getting this thing completed.

MR. INGLISH: Mr. President, it is true that we did request a continuance, and I think the length of the testimony that has been presented here demonstrates why we needed that time in which to prepare. We did not ask that it be set tonight. Somebody else set it tonight. We didn't do that.

If there is a time constraint, it is not of our making, but we do feel very strongly that it would not be reasonable and a denial of due process to require us to continue to pursue this matter tonight

and, again, respectfully we're not going to do so.

MR. MICKES: I suspect that we will go ahead and proceed whether you're here. My reaction would be to proceed with the hearing whether you choose to be here or not, Mr. Inglish.

MR. INGLISH: I'm sorry, but that's our choice.

MR. MICKES: Good night. Mr. Chairman, I'd like the record to reflect that upon receiving the board's intent to at least continue the hearing for some time this evening to complete the testimony, we haven't even completed cross-examination of this witness, that Mr. Inglish announced his intention to, whatever the consequences, to leave the room and, in fact, has vacated the hearing room, and I would suggest to the board that we continue to complete the evidence in the case.

MR. BORAGE: So noted.

MR. MICKES: Since there is no one to cross Mr. Buell, I expect he can be excused at this time.

MR. BORAGE: Mr. Buell, you are excused.

MR. MICKES: Mr. Chairman would you ask if there's any cross-examination of this witness so we have a record?

MR. BORAGE: Is there any cross-examination of this witness?

MS. HARDER: Yes, there is, but not at this time. There would be in a continued case.

MR. MICKES: I think it's now or never. That would be my recommendation.

MR. BORAGE: So noted. The witness is excused.

Upon the Board's refusal to grant the continuance, Moore and his attorneys left the hearing.

The hearing proceeded until the case against Moore was completed, at 5:48 a.m. the next morning. Subsequent to the hearing, the Board offered Moore the opportunity to submit affidavits from his proposed witnesses, but Moore declined the opportunity. On March 31, 1990, the Board voted to discharge Moore. The Board issued findings of fact and conclusions of law

setting forth the basis for its decision. Moore appealed the decision to the Circuit Court of Callaway County.

The circuit court entered an order reversing the Board, finding the Board had arbitrarily and capriciously abused its discretion in denying Moore's demand for a continuance, and thus, the Board violated Moore's right to due process by depriving him of a fair hearing. On September 19, 1990, the Board filed a Motion to Vacate the Circuit Court's Order, which was denied. The Board appealed to the Missouri Court of Appeals, Western District. The court of appeals reversed the circuit court and reinstated the Board's decision terminating Moore. We granted transfer to consider the due process afforded Moore pursuant to Article I, Section 10, of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution.

 In order to invoke the mandates of procedural due process, one must have been deprived of a property interest recognized and protected by the Due Process Clauses. *Belton v. Board of Police Com'rs of Kansas City*, 708 S.W.2d 131 (Mo. banc 1986). As a permanent teacher entitled to the protection of the Missouri Teacher Tenure Act, Moore had a property interest in continued employment protected by both procedural and substantive due process. §§ 168.114–168.120, RSMo 1986. Thus, Moore was entitled to procedural due process before his employment contract could be terminated.

 The Due Process Clauses require that in order to deprive a person of a property interest, he must receive notice and an opportunity for a hearing appropriate to the nature of the case. *Belton*, 708 S.W.2d at 137. Due process contemplates the opportunity to be heard at a meaningful time and in a meaningful manner. *Nixon v. Williamson*, 703 S.W.2d 526 (Mo. App.1985). The dispositive issue before

this Court then rests upon whether the failure to grant the continuance deprived Moore of a fair hearing because he was not given the opportunity to be heard at a meaningful time and in a meaningful manner.

 We must first address whether by leaving the hearing, Moore waived his right to due process. Due process merely affords the *opportunity* to be heard and, thus, a party can waive his due process right to be heard by voluntarily absenting himself from the proceedings. *Birdwell v. Hazelwood School Dist.*, 491 F.2d 490, 494 (8th Cir.1974). If the claimant's due process rights have been violated prior to his abandonment, then the claimant has not waived his rights because he was not afforded a fair hearing and, thus, is entitled to relief. On the other hand, if the hearing complied with the requirements of due process up to the time claimant left the hearing, then the claimant's decision to leave and his failure to cross-examine witnesses, to make objections and to present his evidence waives his right to complain of anything thereafter. One faced with such a dilemma gambles as to whether the reviewing court will, indeed, find a violation of due process. Moore left the hearing upon the denial of his continuance. Therefore, we must determine whether, at this point, the Board had provided a fair hearing that complied with due process.

 The Board makes two ancillary arguments in support of its action; we reject both. The Board points out that the hearing was held under strict time constraints because some members might be replaced at the Board election scheduled 14 days after the hearing. Section 168.118(5) provides that a transcript must be furnished to the Board within ten days following the hearing, leaving only three days until the election in which to make a decision and prepare written findings of fact and conclusions of law.[1] Although this

---

1. Neither party suggested the possibility of expediting the transcript. It is common practice in litigation to pay the court reporter an extra fee to receive a deposition or trial transcript within one or two days after a hearing. Even if arrangements had not been made to expedite the transcript for the first evening session, it should have been possible to obtain an expedited transcript of an additional session within the time in

schedule creates a problem, this does not justify the Board's failure to take the time necessary for a proper hearing, if, in fact, another session was required to properly complete the hearing. The Board's counsel points to the fact that Moore requested a continuance to prepare his defense to the charges. This request does not justify the Board's refusal of a continuance on the night of the hearing if, in fact, such a continuance was necessary to afford due process. The ultimate responsibility for the scheduling rested upon the Board. The Board served the warning letter on May 19, 1989, and, under section 168.116.2 could have proceeded by serving charges within thirty days thereafter, rather than shortly before the election. The hearing could have been scheduled as early as July 1989, instead of March 1990. It was the Board's responsibility to schedule the hearing with sufficient time to afford Moore a hearing that complied with due process. Thus, the shortage of time should not be a factor in justifying the denial of any necessary continuance.

■ The Board also argues that its refusal to give a continuance is irrelevant because it would not have changed the result. In essence, the Board is arguing that it does not have to afford the claimant due process if his claim is without merit. We unequivocally reject this contention. Compliance with the Due Process Clauses does not depend upon the merits of the claim.

■ The granting or denying of a continuance rests in the sound discretion of the tribunal and will not be disturbed on appeal in the absence of a showing of abuse of that discretion. *Becker v. Missouri Dept. of Corrections and Human Services*, 780 S.W.2d 72 (Mo.App.1989). Abuse of discretion means an "untenable judicial act that defies reason and works an injustice." *Jennings v. City of Kansas City*, 812 S.W.2d 724, 736 (Mo.App.1991). An administrative agency is given broad discretion in such decisions and "the appellate court will give every possible intendment to the decision of the [agency] and which the non-expedited transcript for the first

such ruling will not be set aside unless it is shown that the denial of a continuance is abused by an arbitrary and capricious ruling." *Becker*, 780 S.W.2d at 78.

At the beginning of the hearing, as well as in discussing claimant's motion for a continuance at 2:15 a.m., there were references to the possibility of completing the entire hearing during this session. The dissent interprets the discussion in connection with the motion for continuance to require that the entire hearing be completed at this session. However, the Board President did not state unequivocally that the hearing would continue on this evening until it was fully completed. We interpret the thrust of the ruling as leaving in abeyance the question of whether the Board would consider a renewed motion for continuance at a later time. Mr. Mickes, the attorney representing the Superintendent, stated, "I would suggest that we continue to proceed and cover as much ground if not all of the ground as we can." Later in the discussion, Mr. Mickes said, "Whether we are able to complete totally tonight or not, we certainly have time to complete a substantial part of the case so we don't wind up having to do this another night." This discussion left open the possibility of a continuance later in the hearing.

■ Moreover, the granting of a continuance under these circumstances depends upon the effect of the late hour upon the ability of all of those present to participate in the hearing in a meaningful way. The mere fact that an administrative hearing extends well into the night, without a showing that the claimant, his attorney or his witnesses were in any way exhausted or unable to perform their duties, is insufficient to show a violation of due process. *Bills v. Arizona State Board of Education*, 169 Ariz. 366, 819 P.2d 952, 955 (App.1991). The record in the present case is silent in this respect. Although we take judicial notice that at 2:15 a.m. most people are tired and probably not as alert as earlier in the evening, Moore's argument would be stronger with a better record.

session was received.

■ In his motion for a continuance, Moore's counsel argued primarily that Moore should not be required to present his witnesses at this late hour. In fact, the hearing had not reached the point where Moore was being called upon to present his evidence; Mr. Buell, the high school principal, had just completed his direct testimony and had been tendered for cross-examination. It is not unusual for a tribunal to make every effort to complete both the direct and cross-examination of the witness on the stand before adjourning. As it turned out, Moore would not have been required to call his witnesses and present his defense until some time after 5:48 a.m. when the Superintendent ultimately rested his case. Cross-examination by Moore would have further delayed the presentation of Moore's defense. Moore's decision to abandon the hearing deprives us of the opportunity to find out whether the Board would actually have required him to go forward with his own case and complete the hearing without a continuance. We have little doubt that had the Board required Moore to complete the entire hearing at this session, that his right to a full and fair hearing as required by due process would have been violated.

This Court must defer to the agency and, thus, is bound to uphold the agency's ruling unless a clear abuse of discretion has been demonstrated. The burden of demonstrating such abuse rested on Moore. Although this is a very close case, we find that the Board's decision to proceed with the cross-examination of the witness then on the stand was not unreasonable. In view of the discretion lodged in the Board to grant or refuse a continuance and taking the Board's ruling in its most favorable light to the agency on appeal, this Court concludes that the decision of the Board should be affirmed.

■ Moore raises two other points on appeal. Moore claims the Board waived its right to bring charges against Moore because new contracts were issued following the warning letter. We recently rejected this contention in O'Connell v. Springfield School District, 830 S.W.2d 410, 416–417 (Mo. banc 1992). In addition, Moore argues that the immoral conduct charged against him involved his operation of a bail bond business and that this does not constitute immoral conduct as a matter of law. It is unnecessary for this Court to consider this argument because the charges against Moore concerning the bail bond business actually involved the issue of whether the operation of such a business during school hours constituted immoral conduct. The nature of the business Moore carried on outside of school hours was not at issue. Moreover, there were numerous other charges the Board found to be true that were fully supported by the evidence as well as by Moore's admissions.

We reverse and remand to the trial court with instructions to reinstate the decision of the Board.

ROBERTSON, C.J., and COVINGTON, HOLSTEIN and BENTON, JJ., concur.

BLACKMAR, Senior Judge, dissents in separate opinion filed.

RENDLEN, Senior Judge, concurs in opinion of BLACKMAR, Senior Judge.

PRICE, J., not sitting because not a member of the Court when case was submitted.

BLACKMAR, Senior Judge, dissenting.

I am of the opinion that the Board of Education failed to accord the tenured teacher a hearing that complied with minimal standards of due process and, so, dissent. I would affirm the judgment of the circuit court.

A tenured teaching position is a valuable asset that can be divested only for cause, following notice and hearing. Sections 168.114–168.120, RSMo 1986. The protection of the teachers' rights is committed, in the first instance, to the Board of Education, which hears the evidence and definitively resolves factual issues. Ross v. Robb, 662 S.W.2d 257 (Mo. banc 1983), rejecting the claim that the Board could not hear and dispose of charges initiated by it or its superintendent. The law provides for a limited review in circuit court, during

which procedural questions relating to the hearing may be addressed along with points about the sufficiency of the evidence, which are not involved here. The courts afford great deference to the Board, both as to substantive and procedural requirements, but the ultimate resort on questions of law is to the courts.

Any experienced practitioner can empathize with the scenario presented by this record. The Board convened a hearing at 7 p.m., hoping to conclude it in a single sitting. At 2:15 a.m. the direct examination of an important witness, the school principal, was completed, and the witness was turned over for cross examination. At this time the Board had other witnesses, and the teacher had 20 sequestered witnesses he intended to call. Counsel for the teacher asked that the hearing be adjourned. The Board, after receiving incorrect and misleading advice from its counsel, said, "Carry on." There was no suggestion that the hearing continue only through the cross-examination of the principal, or that it continue until the Board put on its case. Counsel for the Board, who was in the best position to know, gave no estimate as to when he might complete his case. There was no suggestion that the teacher's counsel could excuse his witnesses, so that they could be heard at an adjourned session. Counsel for the Board said that he wanted to avoid "having to do this another night."

The hearing continued, without cross examination of the Board's witnesses, until 5:45 a.m. The teacher's counsel had objected to requiring the teacher "to commence sometime near 3:00 or 4:00 o'clock in the morning to present his defense of these charges...." Had there been any cross-examination, the actual defense could not have started until much later. The Court now says that the right of cross-examination was waived by counsel's withdrawing from the hearing, which would be so under normal conditions. But counsel properly anticipated what would happen if they remained. Any question on cross-examination would bring forth scowls, or yawns, or both, from the Board members. The continued hearing, under these circumstances, would be a charade.

The Board's decision was actuated by the advice of its counsel, which, as the Court's opinion points out, was patently incorrect. Counsel grossly exaggerated the time constraints and stated, incorrectly, that the Board that heard the evidence had to decide the case. A decision may be rendered by the Board in office, if the procedural requirements have been met. The successor Board would have full authority to act on the case. Coupled with the circumstance that the school authorities had set the schedule, and had not acted so promptly as they could have, counsel's protestations of time constraints were quite misleading. A detached observer might conclude that the Board was anxious to have the case decided so that it could be used in the campaigning for the approaching election.

The Court's opinion frankly states as follows:

We have little doubt that had the Board required Moore to complete the entire hearing at this session, that his right to a full and fair hearing as required by due process would have been violated.

But the Court goes on to excuse the Board by saying:

We find that the Board's decision to proceed with the cross examination of the witness then on the stand was not unreasonable.

The suggestion that the Board's decision was limited to the cross-examination of the principal does not accurately reflect the record. The Board's counsel wanted to avoid, at all costs, the necessity for having to come back another night. How any recess could be directed, within this constraint, is difficult to fathom. Counsel for the teacher had absolutely no reason to believe that a later request for adjournment would be received any more favorably, when Board counsel's impatience and misleading advice is factored. They could not safely release their witnesses. Had the teacher's counsel sought to make a record in any detail, they would be accused of filibustering. The Court carries the princi-

ple of deference too far, in reforming the Board's manifest decision.

The Court says:

We interpret the thrust of the ruling as leaving in abeyance the question of whether the Board would consider a renewed motion for continuance at a later time. ...

This is inappropriate deference, without the least record support. We should not, in the interest of deference, condone manifest injustice.

The Court cites the case of *Bills v. Arizona State Board of Education*, 169 Ariz. 366, 819 P.2d 952 (App.1991), for the proposition that:

[T]he mere fact that an administrative hearing extends well into the night, without a showing that the claimant, his attorney, or his witnesses were exhausted or in any way unable to perform their duties, is insufficient to show a violation of due process. ...

The *Bills* case is so different factually that its citation is not only without value, but positively misleading. There a school board presented its case during the day, concluding at 6 p.m. The teacher asked for an adjournment; which was denied, and he then put on his case. Closing arguments were had, and the Board began deliberations at 1:30 p.m. Here, counsel was confronted, at 2:15 p.m., with prospects for a hearing that might well continue until the afternoon. Neither the Board nor its counsel gave any suggestion of any other possibility. It is not improbable that they actually courted a waiver and hoped that counsel would withdraw.

It simply was not possible to conclude a meaningful hearing under these circumstances. Counsel should not have to faint, or profess chest pains, in order to demonstrate that people do not fare well in tasks requiring serious intellectual application after 2 o'clock in the morning. It is good in most cases to require counsel to make a detailed record, but there are times when it is patent that the making of a record would do no good. In these situations the Court should not use the record as an excuse.

The damage is not repaired by the offer to the teacher, three days later, of the opportunity to present affidavits of his witnesses who were not heard. This was simply a belated effort to shore up the record. Counsel could appropriately sense that the affidavits would do no good. There are times when it is proper to receive affidavits in advance of testimony, so as to determine issues of materiality or to reduce the volume of cumulative evidence. Under the circumstances of this case, however, the offer to receive affidavits does not correct the unfairness.

It is significant that the circuit court found the hearing to be lacking in due process. That court, like this Court, is a reviewing court in cases of this kind. It does not retry the facts. But we often rely on the trial courts to scrutinize complicated records, which is a task not ordinarily allotted to us. The circuit court has less of an ivory tower appearance than do appellate courts and, I believe, viewed the record more realistically than does this Court.

I gain a distinct impression from the entire record, coupled with the Board's briefs and its counsel's argument here, that the Board had made up its mind well in advance of the hearing and sought to get through, as soon as possible, a procedure that it considered to be a burdensome formality. The Court properly rejects counsel's argument that the Board's case was so strong that no further hearing was necessary, but the very making of this argument supports my impression. It also casts doubt on counsel's role as advisor to and principal spokesman for the Board on the procedural aspects of the hearing.

Boards of Education exercise great responsibility. Their members necessarily are not learned in the substantive and procedural requirements of the law, and it is the duty of the courts to instruct them in the requirements of a fair hearing, especially in cases in which their counsel may have given misleading advice. They are not attuned to procedural requirements. It is neither difficult nor unreasonably burdensome to conduct disciplinary or discharge hearings that comply with the inter-

nal and external standards of fairness. Here the Board has fallen short.

The judgment of the Circuit Court, setting aside the dismissal, should be affirmed.