MELLOY, Circuit Judge,
dissenting.
I agree with the majority that we must apply the modified categorical approach to Missouri’s general escape statute. I disagree, however, with the majority’s fact-specific inquiry into the particular level of security present at the time of Parks’s escape. Instead, I would hold that a walkaway escape from a halfway house, as it is generally committed, is not a crime of violence. Textual support exists in Missouri’s statutes for subdividing non-violent escapes between walkaway escapes from halfway houses and residential treatment facilities, on the one hand, and different forms of escape, on the other. This distinction, based on the type of facility involved in the escape rather than the specific level of security present at the moment of any particular escape, captures the relevant differences between types of escapes as generally committed “in the ordinary case.” James v. United States, 550 U.S. 192, 208, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).
Further, this facility-based definition relies upon facts more likely to be addressed in the relevant court records from prior offenses rather than facts based on assumptions as in the present case, or through impermissible and expanded evidentiary inquiries.[8] In general, there ex *917 ists a fíne line separating the examination of crimes as committed “in the ordinary case,” id., from overly specific examination of crimes as committed in any particular instance, see Taylor v. United States, 495 U.S. 575, 601, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (“If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant’s prior offenses, surely this would have been mentioned somewhere in the legislative history”). By defining walkaway escape through reference to the quantity and type of security that exists, I believe the majority has crossed this line in a manner that will lead to confusion in application and force district courts to focus too individually upon how particular defendants committed their specific offenses rather than how the offense is committed in the ordinary case.
Further, even if I were in agreement with the majority’s approach, the record in the present case does not demonstrate the risk of physical violence or the potentially explosive or volatile circumstances presumed by the majority’s reasoning. Rather, the “front door officer” at the halfway house was devoid of authority to engage, confront, or pursue any residents who left without permission.[9] To the extent, then, that it might ever be appropriate to inquire specifically as to the unproven facts surrounding a particular resident’s escape from a halfway house and examine the precise level of security present at the moment of an escape, the present case does not support the majority’s conclusion. I believe that, in most cases, state court *918 records will more likely identify the facilities from which residents escape rather than details surrounding the level of security at the time of escape. For eminently practical reasons, then, I believe the textually supported subdivision between types of facilities will lend itself to more sensible application in future cases.
Missouri Revised Statute § 217.390 (1989)[10] demonstrates that mere walkaway escapes from halfway houses and unsecured facilities were punished under Missouri’s escape statute at the time of Parks’s escape. Section 217.390 provides a textual basis for subdividing Missouri’s escape statute into at least two distinct categories: walkaway escapes and other escapes from confinement. Cf. United States v. Woods, 576 F.3d 400, 406 (7th Cir.2009) (emphasizing the importance of divisibility in a statute’s text). Because section 575.210 is overinclusive and textually divisible by type of facility, the next step is to apply the modified categorical approach, which “permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record — including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.” Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010). Considering these state court materials, we must then determine which offense Parks committed. Importantly, in deciding whether an offense is a crime of violence, we must “consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.” Begay v. United States, 553 U.S. 137, 141, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). This approach “avoids the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant’s prior crime, as committed on a particular occasion, did or did not involve violent behavior.” Chambers v. United States, — U.S. -, 129 S.Ct. 687, 690, 172 L.Ed.2d 484 (2009).
The error in the district court’s analysis — and the driving force in my dissent— is that it relies on facts particular to Parks’s offense to impute a risk of violence that would not exist in the ordinary case of a walkaway escape. The district court plainly considered whether Parks’s “behavior involved conduct that presented a serious potential risk of physical injury to another” — not whether the statutory offense, as it is ordinarily committed, would present a serious potential risk of physical injury to another. The majority relies on facts specific to Parks’s offense, for example, that Parks was running, that a front door officer was present, and that the door he exited was supposed to be used for intake. Majority Op. swpra pp. 915-16. Without a textual basis, the majority subdivides Missouri Revised Statute § 575.210 into “true walkaway offenses” and some other category based on the particular level of security at the moment of a specific *919 defendant’s escape. This analysis, in my view, is not faithful to the intended purpose of the modified categorical approach because it utilizes the state court records to evaluate how Parks committed a previous crime, rather than which statutory crime Parks committed.
I would hold that Missouri’s escape statute is overinclusive and divisible between escapes from confinement and walkaway escapes. Further, I believe the state court records show that Parks, by “absenting himself without leave from ... [the] halfway house,” committed a walkaway escape. Mo.Rev.Stat. § 217.390. Lastly, without analyzing the issue in detail here, I believe our Court should join the persuasive majority of circuit courts, including every published opinion from a circuit court deciding this issue, to hold that a walkaway escape in the ordinary case is not a crime of violence for purposes of the career-offender sentencing guideline. See, e.g., United States v. Lee, 586 F.3d 859, 874 (11th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 2392, 176 L.Ed.2d 782 (2010); United States v. Hopkins, 577 F.3d 507, 514-15 (3d Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 1912, 176 L.Ed.2d 385 (2010); United States v. Charles, 576 F.3d 1060, 1068-69 (10th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 1027, 175 L.Ed.2d 628 (2009); United States v. Ford, 560 F.3d 420, 423 (6th Cir.2009); United States v. Templeton, 543 F.3d 378, 383 (7th Cir.2008); United States v. Piccolo, 441 F.3d 1084, 1088 (9th Cir.2006). But see United States v. Delgado, 320 Fed.Appx. 286, 286-87 (5th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 552, 175 L.Ed.2d 384 (2009) (unpublished per curiam).
For these reasons, I respectfully dissent.

. Further, it likely will be possible in many cases to take judicial notice of the type of facility at issue, or to discern the nature of the facility from precedent. See, e.g., St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 504, 113 *917 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("Petitioner St. Mary’s Honor Center (St. Mary's) is a halfway house operated by the Missouri Department of Corrections and Human Resources (MDCHR).”); State v. Wells, 804 S.W.2d 746, 747 (Mo. 1991) (noting that an inmate from St. Mary's was outside the facility visiting the home of a relative); State v. Chambers, 714 S.W.2d 527, 533 (Mo. 1986) ("[A]n inmate at ... St. Mary’s Honor Center in St. Louis ... was free to travel outside the Honor Center because he had been issued a 24-hour pass.”); Davis v. State, 829 S.W.2d 610, 610 (Mo.Ct.App.1992) (noting a defendant was "temporarily permitted to go outside of the facility without being accompanied by a guard with the understanding he was required to return to St. Mary's ... that evening”); State v. Galvan, 795 S.W.2d 113, 115 (Mo.Ct.App.1990) (noting a defendant was "assigned to St. Mary's Honor Center, a 'halfway house’ in St. Louis”); In the Interest of M.L.W., 788 S.W.2d 759, 760 (Mo.Ct.App. 1990) (describing a St. Mary's Honor Center resident as working at a job outside the facility); Becker v. Mo. Dep’t of Corrs. & Human Servs., 780 S.W.2d 72, 74 (Mo.Ct.App.1989) (describing St. Mary's Honor Center and stating, "In an honor center, an inmate has already received a conditional release date before being transferred there. At the center inmates are given certain privileges. They are allowed to work, go to school, associate with their family and make use of passes.”).

. The record does not support the majority's conclusion that the front door officer was a guard whose presence necessarily shows Parks risked a violent encounter when fleeing the facility. The scope of authority regarding a particular halfway house employee’s use of force is not the type of fact likely to be present in most state court records of prior offenses. On the other hand, the general concept of halfway houses is well understood, and state court records are likely to identify the facilities involved in prior escapes as jails, prisons, or halfway houses. Further, I note that Parks has submitted affidavits from two employees of the particular halfway house at issue in his case, and both employees assert that they were specifically instructed not to engage, confront, or otherwise attempt to physically stop residents from leaving the facility. Rather, the front door officers were instructed simply to report escapes. I do not mean to suggest that we should base our decisions on affidavits or other evidence outside the record of the prior offense. I note these facts only to illustrate the incorrect assumptions underlying the majority’s application of its overly fact-specific and individualized inquiry in this case.

. At the time of Parks's conviction, Section 217.390 provided:
An offender absenting himself without leave from any person in charge of his supervision, or from any work assignment, educational release program or job outside of the institution, or from any halfway house or correctional institution operated by another political subdivision to which he has been assigned, or who willfully fails to return to such place at the appointed time after having been permitted to leave, shall be deemed on “escape” status. He shall be reported by the division to the appropriate law enforcement officer and upon conviction shall be sentenced for escape as provided in [Mo.Rev.StatJ section 575.210.
(Emphasis added).