Susan KERTH, in her capacity as Personal Representative of The Estate of Alfred H. Kerth, III, Deceased, Respondent,

v.

**POLESTAR ENTERTAINMENT, Glenn Tobias, and Besdine Management Company, Appellants.**

No. ED 93435.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 22, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 2010.

Application for Transfer Denied Dec. 21, 2010.

Jeff N. Dunphy, St. Louis, MO, for appellants.

Andrew D. Dillon, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

### Introduction

The defendants—Polestar Entertainment, Glenn Tobias, and Besdine Management Company—appeal the circuit court's judgment denying their motion to set aside a judgment entered by the trial court in 2007 in favor of the plaintiff. Because the defendants were not provided notice of the 2007 trial setting, the defendants' due-process rights were violated and the trial court's judgment must be set aside as void. We reverse and remand.

### Factual and Procedural Background

The plaintiff, Susan Kerth, in her capacity as personal representative of the estate of Alfred H. Kerth, III, filed suit against the defendants, seeking damages for common-law fraud and breach of contract. The plaintiff alleged that in 1999 defendants Tobias and Polestar Entertainment,[1] a film production company, approached Mr. Kerth about investing in a venture to acquire the rights to and produce a sequel to the film "Easy Rider." By written agreement, Mr. Kerth invested $125,000 in the project. After he died in 2002, attorneys for his estate discovered the investment contract and, after investigation, filed suit in 2004 on behalf of his estate. The defendants filed answers to the petition on October 19, 2004.

Procedurally, the cause was passed for settlement and placed on the dismissal docket in June of 2006. On September 11, 2006, the plaintiff filed a request for trial setting; the trial court did not act on this request. The next day, September 12, 2006, defense counsel moved to withdraw as counsel for the defendants. Counsel sought leave to withdraw on the grounds that the defendants had failed to cooperate with counsel in defense of the action and had failed to contact counsel in the previous five months despite numerous efforts by counsel to contact the defendants by telephone and mail. The trial court held a hearing on October 2, 2006, and granted defense counsel's motion.

Over five months later, on March 15, 2007, the plaintiff moved to have the case removed from the dismissal docket and placed on a trial docket "approximately four months from this date." A copy of this motion was mailed to the defendants, at an address on Olympic Boulevard in Los Angeles, California, the same address used by the plaintiff when serving the defendants. The trial court granted plaintiff's

---

1. The plaintiff alleged that defendant Besdine Management Company is the successor in interest to defendant Polestar Entertainment, and that at all relevant times defendant Glenn Tobias was the President of both companies.

motion and set trial for July 9, 2007. There is no record of the plaintiff mailing notice of this trial setting to the defendants. Also, there is no record of the court clerk mailing notice of the trial setting to the defendants. However, the trial setting was published in the June 14, 2007 edition of *The St. Louis Daily Record.*

The trial court called the cause for trial on July 9, 2007. The defendants did not appear. Following presentation of the plaintiff's evidence, the trial court entered judgment in favor of the plaintiff and against the defendants in the amount of $699,360. This total amount represented $188,000 in compensatory damages, $135,360 in pre-judgment interest, and $376,000 in punitive damages.

Defendant Tobias asserts that he did not learn of the judgment's existence until February 17, 2009, when the plaintiff initiated collection efforts. Mr. Tobias knew in October of 2006 that his Missouri attorneys had withdrawn; however, he did not retain new Missouri counsel for the case. At the time, Mr. Tobias was involved in other lawsuits in California, Taiwan, Europe, and the Bahamas. After consulting with his solicitor, Mr. Marriott,[2] Mr. Tobias decided to give priority to these other lawsuits over the Missouri lawsuit. Mr. Tobias did not ask Mr. Marriott to monitor the status of the Missouri lawsuit, and Mr. Marriott made no efforts to keep apprised of the status of the Missouri case. Mr. Tobias did not contact counsel for the plaintiff; he presumed instead that the plaintiff would contact him. He did not direct any of his employees at the two defendant corporations to look into the status of the Missouri lawsuit. Mr. Tobias had another attorney in California, Mr. Williamson, who began representing him

in early 2008. Mr. Williamson was also counsel for defendant Besdine Management Company, but not defendant Polestar Entertainment. Mr. Tobias did not inform Mr. Williamson of the pending case in Missouri. In sum, Mr. Tobias made no effort whatsoever to keep himself informed about the status of the Missouri case between October 2006, when his Missouri counsel withdrew, and February 2009, when his California attorney informed him that the plaintiff's attorneys had started collection efforts. Mr. Tobias stated he had "a lot of things on his plate," so his "curiosity was not piqued." Rather he presumed he would be notified if a trial was set.

As mentioned above, the defendants had an initial address on Olympic Boulevard, in Los Angeles, California. Sometime in 2006 or 2007, after the plaintiff had filed suit and served the defendants, Mr. Tobias and the two defendant corporations moved. By the spring of 2007, when the trial court set this case for trial, the defendants were located at an address on Mulholland Drive, in Los Angeles, California. Mr. Tobias was unsure if he placed a change-of-address and forwarding order at the post office for the two defendant corporations. He noted that the two businesses were inactive at the time. He stated that the post office had a forwarding address from the Olympic Boulevard address for him on file. Mr. Tobias did not personally notify the Missouri court of his change of address, but noted that the October 2006 motion to withdraw he had received from his attorneys contained his new address, and that this motion had been both filed with the court and mailed to plaintiff's counsel.

2. From the record, it appears Mr. Marriott was a solicitor from the United Kingdom, who was then in California.

On March 16, 2009, over twenty months after judgment was entered, the defendants filed a motion pursuant to Rule 74.06 to set aside the judgment. The defendants alleged their due-process rights had been violated because they were not provided notice of the trial setting. In consequence, they argued, the court's July 9, 2007 judgment was void and must be set aside.

The circuit court denied the defendants' motion. In so doing, the court found that the defendants had not received notice of the trial setting. The court concluded, however, that the July 9, 2007 judgment was, if anything, an irregular judgment but not a void judgment. The court noted that it may grant relief from an irregular judgment under Rule 74.06(b)(3), but that this path was unavailable, as the defendants' motion was filed too late.[3] The court further concluded that to the extent the judgment could be considered void under Rule 74.06(b)(4), it would be a voidable judgment and not a judgment void from its inception. Noting two propositions of law holding that a party has a duty to keep abreast of all proceedings in his case, and that a party can waive his due-process rights to be heard by voluntarily absenting himself from the proceedings, the court declined to set aside the judgment because of the defendants' conduct. In particular, the court faulted Mr. Tobias for making no effort to keep himself informed of the proceedings in the case. The court found that Mr. Tobias's conscious decision to ignore this case and devote his attention to other litigation was no ground for setting aside a judgment. Further, the court concluded that if the judgment could be deemed void, the defendants were not entitled to relief

as their motion to set aside had not been filed within a reasonable time as required by Rule 74.06(c).

The defendants now appeal, alleging the circuit court erred in denying their motion to set aside the judgment.[4] They maintain the judgment was void from its inception. The defendants further argue the judgment, being void, was not subject to the "reasonable-time" requirements of Rule 74.06(c). And they contend their actions or inactions did not constitute a waiver of their due-process rights to notice of the trial setting.

### Standard of Review

■ Ordinarily, we review the circuit court's ruling on a motion to set aside a judgment under Rule 74.06 for an abuse of discretion. *In re Marriage of Hendrix,* 183 S.W.3d 582, 587 (Mo. banc 2006). However, whether a judgment should be vacated because it is void is a question of law that we review *de novo;* we give no deference to the circuit court's decision. *O'Hare v. Permenter,* 113 S.W.3d 287, 289 (Mo.App. E.D.2003); *Smith v. Square One Realty Co.,* 92 S.W.3d 315, 316 (Mo.App. E.D.2002).

### Discussion

■ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "The fundamental requisite of due process

---

**3.** Rule 74.06(c) requires that a motion seeking relief from an irregular judgment be filed "not more than one year after the judgment or order was entered."

**4.** We deny the defendants' pending motions before this Court.

of law is the opportunity to be heard." *Id.* "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.* Our Missouri courts have likewise held that "[c]onstitutional due process requires that for a judgment entered against a party not in default to be valid, there must have been notice of the trial setting and an opportunity to be heard must have been granted at a meaningful time and in a meaningful manner." *Breckenridge Material Co. v. Enloe*, 194 S.W.3d 915, 921 (Mo.App. E.D.2006); *see also Midwest Grain & Barge v. Poeppelmeyer*, 295 S.W.3d 211, 213 (Mo.App. E.D.2009).[5]

■ The defendants here were not in default. As noted earlier, the defendants answered the plaintiff's petition. "It is the failure to file a responsive pleading that causes a party to be in default, not the party's failure to appear for trial." *Breckenridge*, 194 S.W.3d at 921; *accord Midwest Grain & Barge*, 295 S.W.3d at 213; *see also* Rule 74.05(a). Because the defen-

dants were not in default, and because the trial court entered judgment following the July 9, 2007 trial, the defendants were entitled to notice of the trial setting. *Midwest Grain & Barge*, 295 S.W.3d at 213.

■ We find no evidence that the defendants were provided notice. To begin, the plaintiff did not mail notice of the trial setting to the defendants. The plaintiff did send the defendants, at their last known address on Olympic Boulevard, a copy of her motion to have the case removed from the dismissal docket and placed on a trial docket. This motion, however, only stated the plaintiff's desire to have the cause placed on a trial docket "approximately four months from this date." The plaintiff did not send the defendants a copy of the court's order setting trial for July 9, 2007. Additionally, the trial court did not attempt to serve the defendants with notice of the order of trial setting. We note the trial court had a duty to send the defendants notice of the trial setting once ordered by the trial court. Rule 74.03;[6] Rule 43.01;[7] *Breck-*

---

**5.** To invoke the mandates of procedural due process, one must have been deprived of a property interest recognized and protected by the Due Process Clause. *Moore v. Board of Educ. of Fulton Public School No. 58*, 836 S.W.2d 943, 947 (Mo. banc 1992). A cause of action—here a suit for damages—is a property right protected by the Fourteenth Amendment. *See Bosworth v. Sewell*, 918 S.W.2d 773, 778 (Mo. banc 1996)(J. Robertson, concurring). Certainly this proceeding is one in which the defendants may be deprived of property. Hence, notice and hearing must conform to the requirements of due process. *Mullane*, 339 U.S. at 313, 70 S.Ct. 652.

**6.** Rule 74.03 of the Missouri Rules of Civil Procedure states:

Immediately upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 43.01 upon each party who is not in default for failure to appear and who was not present in court in person or by

attorney at the time of the entry of such order or judgment. If such notice is not given, the order or judgment shall be set aside for good cause shown upon written motion filed within six months from the entry of the order or judgment. This Rule 74.03 shall not preclude relief under Rule 74.06.

**7.** Rule 43.01(a) of the Missouri Rules of Civil Procedure states, in pertinent part:

Each affected party shall be served with:

. . .

(3) Every written notice, appearance, demand, offer of judgment, order, and similar paper that by statute, court rule or order is required to be served.

No service need be made on parties in default for failure to appear, except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons.

*enridge*, 194 S.W.3d at 919. The trial court failed to do so. "Unless the record establishes that the complaining party was provided notice of a trial setting, we may conclude the complaining party did not receive notice." *Breckenridge*, 194 S.W.3d at 920.

■■■ The plaintiff contends the defendants received constitutionally-sufficient notice of the trial setting because the *St. Louis Daily Record* published the trial setting three weeks before the scheduled trial date.[8] The circuit court concluded that notice of the trial setting by publication in the *St. Louis Daily Record* was inadequate to satisfy due-process concerns. We agree.

The United States Supreme Court's seminal *Mullane* decision regarding constitutional notice is instructive here. In that case, the Court considered the sufficiency of notice by publication given to beneficiaries of a judicial settlement of accounts by the trustee of a common trust. Notice of the filing of the petition seeking settlement was given by publication in accordance with the applicable state law. No other notice was given. The Court held that notice by publication was sufficient for those beneficiaries whose interests or whereabouts could not with due diligence be ascertained. *Mullane*, 339 U.S. at 317–18, 70 S.Ct. 652. As to known beneficiaries whose whereabouts were known, however, the Court held that notice by publication was inadequate and "incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication depriving known persons whose whereabouts were also known of substantial property rights." *Id.* at 320, 70 S.Ct. 652. Notice by publication to known beneficia-

ries was inadequate "because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.*

The defendants here were known defendants, whose whereabouts were known, or reasonably ascertainable. The court file contained two different addresses for the defendants—the original address on Olympic Boulevard, and the address on Mulholland Drive, contained in the certificate of service on defense counsel's October 2006 motion to withdraw. And the plaintiff also had possession of the defendants' addresses. She knew where to serve the defendants with a copy of her petition and also mailed a copy of her March 2007 request for a trial setting to the defendants. While the defendants' address on Olympic Boulevard may have been outdated by this time, at least one of the defendants—Mr. Tobias—stated he had placed a change-of-address and forwarding order at the post office. The plaintiff and the court easily could have informed, or attempted to inform, the defendants of the trial setting by means other than publication alone. Applying the teachings of *Mullane* to our circumstances, we hold that notice by publication does not suffice.

■■■ Publication of the trial setting in this case is insufficient notice for yet another reason. We learn from *Mullane* and its progeny that what constitutes constitutionally-sufficient notice will vary with the circumstances and conditions of a particular case. *Mullane*, 339 U.S. at 314–20, 70 S.Ct. 652; *Jones v. Flowers*, 547 U.S. 220, 227, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006); *State v. Elliott*, 225 S.W.3d 423, 424 (Mo. banc 2007); *Arbogast v. City of*

---

**8.** The *St. Louis Daily Record* is a legal newspaper publication used by the circuit court of the City of St. Louis for transmitting notices, and by attorneys for obtaining notice of trial

and dismissal dockets. *Vilsick v. Fibreboard Corp.*, 861 S.W.2d 659, 664 (Mo.App. E.D. 1993).

*St. Louis,* 285 S.W.3d 790, 797 (Mo.App. E.D.2009). In all instances, however, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane,* 339 U.S. at 315, 70 S.Ct. 652. "When notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* "[P]rocess which is a mere gesture is not due process." *Id.* We cannot say that publication of a trial setting on page thirty-four of a legal paper published in St. Louis is notice reasonably calculated to apprise *pro se* defendants, residing in California, of the trial setting. As noted by the *Mullane* court: "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." *Id.*; *see also State ex rel. Am. Family Mut. Ins. Co. v. Clark,* 106 S.W.3d 483, 491 (Mo. banc 2003)(J. Wolff concurring)(discussing notice in context of class action, stating notice by publication should be by publications that class members are likely to actually read. Judge Wolff, quoting the Manual for Complex Litigation,[9] observed that: "[f]inancial and legal journals or sections of newspapers, while useful to a degree, are not likely to be read by many members of the general public." He further noted that geographical considerations become paramount when determining what media are appropriate for notice by publication.).

We acknowledge that notice by publication has been found constitutionally-sufficient in certain cases. The plaintiff relies on three such cases: *Bindley v. Metropolitan Life Ins. Co.,* 335 S.W.2d 64 (Mo.1960);

*Vilsick v. Fibreboard Corp.,* 861 S.W.2d 659, 664 (Mo.App. E.D.1993); and *Sextro v. Burkey,* 950 S.W.2d 523, 525 (Mo.App. E.D.1997). However, these cases are easily distinguishable from the case at hand. The cited cases involved a cause of action dismissed for failure to prosecute, where the trial court published notice of the dismissal docket in either the St. Louis Daily Record or the Kansas City Daily Record, but did not send the plaintiff notice that his case was on the dismissal docket. On appeal, the courts in these cases first distinguished *Mullane,* finding that decision "inapplicable to interlocutory orders of dismissal without prejudice [that] adjudicate no personal or property right of plaintiff, where the court has jurisdiction of the parties and the subject matter." *Vilsick,* 861 S.W.2d at 663; *Bindley,* 335 S.W.2d at 68–70. The courts particularly noted that *Mullane* concerned the validity of initial notices of new proceedings, "where the notice was a prerequisite of due process to the exercise of jurisdiction over the person or the property." *Vilsick,* 861 S.W.2d at 663; *Bindley,* 335 S.W.2d at 68. The courts then concluded that notice by publication in the respective cases was reasonably calculated to apprise the particular plaintiffs that their case was set for trial or that it was on the dismissal docket. *Bindley,* 335 S.W.2d at 69; *Vilsick,* 861 S.W.2d at 664; *see also Sextro,* 950 S.W.2d at 525.

Our facts are subtly but meaningfully distinct. To begin, the party being noticed is different. In the cases relied upon by the plaintiff, the published notice was to a plaintiff, who had initially walked through the courthouse doors, seeking redress in a court of law, but then failed to prosecute his own cause of action. Here, notice is due defendants, who had not voluntarily approached the courthouse steps, and upon

9. MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.211 (1995)

whom the duty to prosecute a case does not fall. Secondly, the nature of the court's action is critically different. In the cited cases, the court simply entered an interlocutory order of dismissal without prejudice that adjudicated no personal or property right of the plaintiff. Here, on the other hand, the cause was tried and judgment entered on the merits against the defendants. Our proceeding was one that was intended to be accorded finality. As discussed above, we find publication by notice to known, out-of-state, *pro se* defendants constitutionally insufficient. While the notice in this case is not an initial notice of a new proceeding, like in *Mullane*, we find it critical that the rights of the parties were being finally adjudicated. Given these circumstances, due process requires more than notice by publication. Such notice was not provided in this case.

The plaintiff additionally argues that the defendants knew the plaintiff was seeking a trial setting and could have easily obtained docket information, including the trial setting, through the internet, through either the circuit clerk's website[10] or through Case.net.[11] As the circuit court noted, the Missouri judiciary has undertaken a concerted effort to make available to the public vast amounts of information, including trial-docket information on pending cases. To date, however, no Missouri court has addressed our specific question—whether a party to a lawsuit can be charged with knowledge of a trial setting based on internet access to case-docket information. Given the expanding nature and use of the internet, and the advances in technology allowing greater and easier access to the internet, the day may come when a party can be charged with such knowledge.[12] But that day has not yet arrived. This Court, as did the circuit court, declines to conclude that the defendants were afforded constitutionally-sufficient notice of the trial date on this ground.

We have concluded, as did the circuit court judge, that the defendants were not provided notice. Where our reasoning diverges from that of the circuit court is in assessing the consequences of this failure. The circuit court concluded that, due to the defendants' actions or inactions, the judgment should not be set aside. We disagree.

■ The failure to provide notice to the defendants of the trial setting violated the defendants' rights to due process. *Midwest Grain & Barge*, 295 S.W.3d at 215. As a consequence, the judgment must be set aside. "A party not in default who does not receive formal written notice of trial setting is entitled to a new trial or

---

10. The web site for the Circuit Clerk, 22nd Judicial Circuit Court (St. Louis City), can be accessed using the following web address: http://www.stlcitycircuitcourt.com.

11. Case.net provides access to the Missouri State Courts Automated Case Management System, where the public may obtain information on case records including docket entries, parties, judgments, and charges in public court. It should be noted that Case.net is not all-encompassing; only cases that have been deemed public under the Missouri Revised Statutes can be accessed through Case.net. It also should be noted that Case.net is not an official record and may contain inaccurate and incomplete information. *See Johnson v. McCullough*, 306 S.W.3d 551, 559 n. 4 (Mo. banc 2010). Case.net can be accessed using the following web address: https://www.courts.mo.gov/casenet.

12. We note that the Missouri Supreme Court has recently charged that "a party must use reasonable efforts to examine the litigation history on Case.net of those jurors selected but not empanelled and present to the trial court any relevant information prior to trial" to preserve the issue of a juror's nondisclosure during *voir dire*. *Johnson v. McCullough*, 306 S.W.3d 551, 559 (Mo. banc 2010).

to have a judgment entered against him set aside." *Breckenridge*, 194 S.W.3d at 921 (citing *Eastin v. Franklin*, 806 S.W.2d 57, 62–3 (Mo.App. S.D.1991); *Tinsley v. Gosnell*, 873 S.W.2d 943, 945 (Mo.App. E.D.1994); and *Fields v. Gibson*, 840 S.W.2d 884, 886–87 (Mo.App. W.D.1992)(holding judgment must be set aside; trial court's failure to give notice of special trial setting to non-defaulting defendant, except by oral announcement at docket call, denied defendant due process of law; noting trial court had due-process obligation to notify defendant of special setting)); *see also Midwest Grain & Barge*, 295 S.W.3d at 215. We need not and do not conclude that every violation of due process entitles a party to the setting aside of a judgment. Here, however, the violation goes to the heart of due process—notice of a proceeding finally adjudicating the parties' rights. Absent notice, the judgment cannot stand.

We, like the circuit court, are displeased with the defendants' conduct in failing to keep informed of the status of the case. Indeed, the plaintiff posits that the defendants cannot now complain about a lack of notice. She argues the defendants "cannot sleep on their rights, ignore the progress of the proceedings and then cry foul years after the fact." The plaintiff asserts that the defendants were duty-bound to keep abreast of the status of the case "so that if the court failed to comply with the rules requiring notice, the defendants could take action to protect their rights."

■ Missouri courts have held that a party has a duty to keep abreast of all proceedings in his or her case from service of original process until final judgment. *See, e.g., Owens v. Vesely*, 620 S.W.2d 430, 433 (Mo.App. S.D.1981); *Citizens Bank of University City v. Gehl*, 567 S.W.2d 423, 425 (Mo.App. E.D.1978); *Estate of Knapp by and through Igoe v. Newhouse*, 894 S.W.2d 204, 208 (Mo.App. E.D.1995). Included in this duty is the party's responsibility to keep the court or counsel informed of any address changes. *Knapp*, 894 S.W.2d at 208. The courts have correspondingly noted that "[i]f a party neglects to look after the course of the proceeding in which he is involved, he should have no cause to complain about the court's action." *Golden v. Euge*, 612 S.W.2d 362, 363 (Mo.App. E.D.1980). The plaintiff and circuit court particularly rely on the *Knapp* case, which is factually similar to the *Gehl* case. Indeed, at first blush, the facts in *Knapp* and *Gehl* appear similar to our own case. In *Gehl*, for instance, the trial court passed the case for settlement, the defendant did not follow through on that settlement, and the trial court set the case for trial. Defense counsel had withdrawn. The defendant did not appear at the trial, and the court entered judgment for the plaintiff. The defendant unsuccessfully moved to set aside the judgment on the grounds that he had not received timely notice of the trial setting. *Gehl*, 567 S.W.2d at 425. Based upon the principle that a party has a duty to keep abreast of all proceedings from service of process to final judgment, this Court found no abuse of discretion by the trial court in refusing to set aside the judgment. *Id.* We reasoned that the defendant knew the cause was set for trial and passed for settlement, that he had failed to carry out the settlement, that he had no attorney, and that he had failed to notify the court or the plaintiff of his change of address. *Id.; see also Knapp*, 894 S.W.2d at 208 (similar factual situation and holding).

But we find a critical distinction between the *Gehl* and *Knapp* cases and the case at hand. In those cases, the plaintiff provided notice to the defendant. In *Gehl*, plaintiff's counsel mailed notice of the trial setting to the defendant's recorded address.

*Gehl,* 567 S.W.2d at 425. Similarly, in *Knapp,* the plaintiff sent a copy of its motion to reinstate the cause on the trial docket and notice of the hearing to the defendant at his last-known address. *Knapp,* 894 S.W.2d at 205. The defendants' failure to receive notice was due to the defendants' own conduct in failing to notify the court of their change of address. *Gehl,* 567 S.W.2d at 425; *Knapp,* 894 S.W.2d at 206. Here, on the other hand, there was not even an attempt on the part of the plaintiff or the court to provide notice. The defendants' failure to receive notice in this case was not the result of their own negligence.

The *Golden* case, cited by the plaintiff and the circuit court, is similarly inapposite. In *Golden,* the circuit court dismissed the defendant's appeal from a proceeding before an associate circuit court judge for defendant's failure to appear. The defendant appealed to this Court, claiming the circuit court neglected to give him proper notice in that the court failed to set out the exact date for the hearing on his cause of action. *Golden,* 612 S.W.2d at 363. The defendant admitted he received a letter from the court informing him that his case would be set for trial or dismissed on the "July Adjourn Day." He further admitted receiving this letter nearly two months prior to the adjourn day. Citing the proposition that a party has no cause to complain about the court's actions if he neglects to look after the course of the proceedings, this Court held that the notice reasonably informed the defendant when the next action would be taken on his

case and gave him a sufficient period to ascertain the exact date. *Id.* at 363–64. Thus, we held, the circuit court's dismissal of the defendant's appeal was not in error under the circumstances. *Id.* at 364. The difference between *Golden* and the instant case is clear—the court in *Golden,* unlike here, provided notice to the defendant.[13]

The circuit court here found the defendants consciously decided to ignore the lawsuit and direct their resources elsewhere, and concluded that was no ground for setting aside a judgment. We do not condone the defendants' actions. We appreciate that the defendants' actions are an affront to the court's authority. But mere displeasure with the defendants cannot justify a judgment rendered without notice to the defendants. The difficult truth is that the defendants' failure to keep informed of the status of the case did not relieve the trial court of its obligation to notify the defendants of the trial date before entering a judgment against them. *Midwest Grain & Barge,* 295 S.W.3d at 214.

Nor have the defendants waived their due-process right to notice. In denying relief, the circuit court, citing to our Missouri Supreme Court's *Moore* decision, noted that a party can waive his due-process rights to be heard by voluntarily absenting himself from the proceedings. *Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58,* 836 S.W.2d 943, 947 (Mo. banc 1992). The circuit court's recitation of the general principle of law enunciated in *Moore* is correct; the court's application of

---

13. Unlike the circumstances of *Golden,* we do not find that the plaintiff's March 15, 2007 motion to have the case removed from the dismissal docket and placed on a trial docket is constitutionally-sufficient notice of the trial setting. To begin, the plaintiff's request was just that—a request. There is nothing to say that the trial court acted on the motion; it

had not in the past. And secondly, unlike *Golden,* where the court specified a particular day of the month in its letter to the defendant, the plaintiff in our case set forth only a vague time period in her motion, stating merely that she desired a trial setting "approximately four months from this date."

that principle to our circumstances, however, is erroneous.

In *Moore*, a tenured teacher appealed from the school board's decision to terminate his contract. The school board convened a termination hearing; the teacher was duly noticed and attended the hearing in person with counsel. The hearing extended well into the early-morning hours. At 2:15 a.m., after seven hours of testimony, direct examination of the school principal was completed and the witness was turned over for cross-examination. At this time the school board had other witnesses to call, and the teacher had some twenty witnesses he intended to call. Counsel for the teacher asked that the hearing be adjourned and continued to another time. The school board refused. Moore and his attorney then left the hearing. The school board continued the hearing, which was completed at 5:48 a.m. The board offered Moore the opportunity to submit affidavits from his proposed witnesses; Moore declined the opportunity. The board voted to discharge Moore, and he appealed. *Moore*, 836 S.W.2d at 945–47.

In addressing whether by leaving the hearing Moore waived his right to due process, the Court noted that "due process merely affords the *opportunity* to be heard and, thus, a party can waive his due process right to be heard by voluntarily absenting himself from the proceedings." *Id.* at 947 (emphasis in original). Continuing, the court stated: "If the [teacher's] due process rights have been violated prior to his abandonment, then the teacher has not waived his rights because he was not afforded a fair hearing and, thus, is entitled to relief." On the other hand, if the hearing complied with the requirements of due process up to the time the [teacher] left the hearing, then the [teacher's] decision to leave ... waives his right to complain of anything thereafter. *Id.* at 947.

The Court ultimately concluded that the school board's decision to proceed with the cross-examination of the witness then on the stand was not unreasonable, and that at the time Moore left the hearing, the school board had provided a fair hearing that complied with due process. *Id.* at 949. Accordingly, Moore's decision to leave the hearing waived his right to due process. *See also Am. Econ. Ins. Co. v. Powell*, 134 S.W.3d 743, 746–47 (Mo.App. S.D.2004)(noting that a party can waive his due-process rights to be heard by voluntarily absenting himself from the proceedings, then concluding the defendant could not refuse notice that was properly served by mail in accordance with court rules and then assert a due-process violation based on grounds he did not receive actual notice of the court proceeding; denial of motion to set aside affirmed).

However egregious the failings of the defendants, they did not waive their rights to due process. Unlike the defendants in *Moore* and *Powell*, the defendants here never voluntarily absented themselves from, or exited, a hearing for which they were properly noticed. And, importantly, any alleged abandonment by the defendants in failing to appear at trial occurred after their due-process rights had already been violated. We cannot find they waived their right to receive notice of trial from their negligent inattention to the proceeding in Missouri. "Waiver" is defined as "the voluntary relinquishment or abandonment—express or implied—of a legal right or advantage." Black's Law Dictionary 1574 (7th ed.1999). "The party alleged to have waived a right must have had both knowledge of the existing right and the intention of foregoing it." *Id.* We cannot and do not conclude that the defendants waived their due-process rights to notice.

Much has been made by the parties, and the circuit court, of whether the judgment

was irregular, voidable, or void from its inception. At times, courts have been less than precise in distinguishing among judgments. *See McMillan v. Wells*, 924 S.W.2d 33, 35–6 (Mo.App. S.D.1996)(noting that "[t]here has been much laxity in the opinions with respect to the use of the terms 'void' and 'voidable.'" (internal quotation omitted)). Indeed, the boundaries of such judgments are sometimes murky and ill-defined; and, compounding this confusion, some decisions simply fail to address the issue. In truth, the types of judgments do overlap in some instances. *See Beatty v. Conner*, 923 S.W.2d 455, 459 (Mo.App. W.D.1996). Still, an irregular judgment and a void judgment do differ significantly, and receive different treatment under our Rules of Civil Procedure.

■ Rule 74.06(b) classifies the particular errors that may justify setting aside a final judgment and further defines the conditions under which a court may set aside a final judgment. *Beatty*, 923 S.W.2d at 457. The rule provides, in part, that:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment or order for the following reasons: . . . (3) the judgment is irregular; [or] (4) the judgment is void. . . . [14]

Rule 74.06(c) sets forth time limits for filing a motion to set aside, and mandates that "[t]he motion shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered." An irregular judgment is subject to the "reasonable-time" requirement of Rule 74.06(c). *Thompson v. St. John*, 915 S.W.2d 350, 357 (Mo.App. S.D.1996).

---

14. Rule 74.06, entitled "Relief From Judgment or Order," provides in its entirety:

**(a) Clerical Mistakes—Procedure.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected with leave of the appellate court.

**(b) Excusable Neglect—Fraud—Irregular, Void, or Satisfied Judgment.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

**(c) Motion Under Subdivision (b)—Affect on Judgment—Time for Filing—Notice of Hearing—Service.** A motion under subdivision (b) does not affect the finality of a judgment or suspend its operation. The motion shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered. The motion and a notice of a time and place for hearing on the motion shall be served upon the parties to the judgment pursuant to Rule 54.

**(d) Power of Court to Entertain Independent Action—Certain Writs Abolished.** This Rule 74.06 does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these Rules or by an independent action.

Under the rule, a motion to set aside an irregular judgment must be filed within a reasonable time not to exceed one year after the judgment was entered. *Id.; see also Powell,* 134 S.W.3d at 748. A judgment that is void from its inception, on the other hand, is a nullity and is not subject to the "reasonable-time" requirement of Rule 74.06(c).[15] *State ex rel. Houston v. Malen,* 864 S.W.2d 427, 430 (Mo.App. S.D. 1993); *Williams v. Williams,* 932 S.W.2d 904, 906 (Mo.App. E.D.1996). A party may seek relief from a void judgment pursuant to Rule 74.06(b) at any time. *Taylor v. Taylor,* 47 S.W.3d 377, 389 (Mo.App. W.D.2001)(citing *Williams,* 932 S.W.2d at 905–06 (holding motion to set aside filed eight years after entry of void default judgment timely under Rule 74.06), and *Houston,* 864 S.W.2d at 430 (approving motion to set aside judgment filed four years and three months after void judgment entered)).

 The circuit court here concluded the judgment was, if anything, an irregular judgment but not a void judgment. The court further determined that to the extent the judgment could be considered void under Rule 74.06(b)(4), it would be a voidable judgment and not a judgment void from its inception. The court then reasoned that if the judgment could be deemed void, the defendants were not enti-

tled to relief as their motion to set aside had not been filed within a reasonable time as required by Rule 74.06(c). We do not so conclude.

 An irregular judgment for purposes of Rule 74.06(b) is defined as a judgment that is "materially contrary to an established form and mode of procedure for the orderly administration of justice." *Burris v. Terminal R.R. Ass'n,* 835 S.W.2d 535, 538 (Mo.App. E.D.1992). "An irregularity must render the judgment contrary to a proper result." *Id.* Our Supreme Court has noted that "[a]n irregularity may be defined to be the want of adherence to some procedural rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conduct of a suit, or doing it in an unseasonable time, or improper manner." *Barney v. Suggs,* 688 S.W.2d 356, 359 (Mo. banc 1985)(internal quotation omitted). Examples of irregularities noted by the Supreme Court include: (1) rendering a judgment for an amount greater than prayed for in the petition; (2) failing to appoint a guardian ad litem to protect the interests of a minor; and (3) entering a judgment prematurely. *Barney,* 688 S.W.2d at 359 n. 1 (internal citations omitted). The rule allowing a court to set aside a judgment as

---

**15.** We note the wording of Rule 74.06 fails to reflect the well-established caselaw in at least two respects. First, the rule states that on motion and "upon such terms as are just," the court "may" relieve a party from a final judgment or order for the reasons enumerated thereafter. Rule 74.06(b). This wording conveys discretion—the language permits but does not require the court to grant relief in all the situations enumerated in the rule, including the case of a void judgment. Indeed, it is often noted that a trial court's ruling upon a motion to set aside is considered discretionary. *Hendrix,* 183 S.W.3d at 587. Yet, in some situations, a court has no discretion. This is particularly true where there is a void

judgment. A void judgment is a legal nullity. *See, e.g., In re Marriage of Boston,* 104 S.W.3d 825, 831 (Mo.App. S.D.2003). Under such circumstances, it is error to fail to set aside the judgment. *See, e.g., Houston,* 864 S.W.2d at 431. Secondly, in reading subsections (b) and (c) together, the wording suggests that in all the enumerated situations, including that of a void judgment, a motion to set aside must be filed within a "reasonable time." Yet, caselaw holds that the "reasonable-time" limit does not apply to void judgments. Rather a void judgment may be attacked at any time. *Houston,* 864 S.W.2d at 430. The rule could profit from rewording.

irregular reaches only procedural errors that, if known, would have prevented entry of a judgment. *Burris*, 835 S.W.2d at 538.

■ Similarly, courts have defined a voidable judgment as:

> one rendered by a court having jurisdiction, but which is irregularly and erroneously rendered. Such a judgment is valid until vacated by direct proceeding instituted for that purpose or until reviewed on appeal or by writ of error; it becomes valid by failure within the proper time to have it annulled or by subsequent ratification or confirmation.

*McMillan*, 924 S.W.2d at 36 (quoting *Easterline v. Bean*, 121 Tex. 327, 49 S.W.2d 427, 429 (1932)). An example of a voidable judgment is one rendered on a claim for which the statute of limitations has allegedly run. *Powell*, 134 S.W.3d at 748.

■ A void judgment, on the other hand, is defined as:

> [o]ne which has no legal force or effect, the invalidity of which may be asserted by any person whose rights are affected at any time and at any place directly or collaterally. One which, from its inception is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind parties or support a right, of no legal force and effect whatever, and incapable of confirmation, ratification, or enforcement in any manner or to any degree. Judgment is a "void judgment" if court that rendered judgment lacked jurisdiction of the subject matter, *or of the parties, or acted in a manner inconsistent with due process.*

*K & K Investments, Inc. v. McCoy*, 875 S.W.2d 593, 596 (Mo.App. E.D.1994)(quoting Black's Law Dictionary 1574 (6th ed.1990))(emphasis supplied); *see also Platt v. Platt*, 815 S.W.2d 82, 83 (Mo.App. E.D.1991)(holding "a Rule 74.06(b) motion to declare a judgment void is only appropriate when the court that rendered the judgment lacked jurisdiction over the subject matter or the parties, or acted in a manner inconsistent with due process of law").

For example, courts have held judgments void for lack of subject-matter jurisdiction. *Williams*, 932 S.W.2d at 905–06; *Taylor*, 47 S.W.3d at 388; *In re D.C.O. and A.D.O.*, 239 S.W.3d 714, 716 (Mo.App. S.D.2007); and *Carver v. Carver*, 673 S.W.2d 92, 95–6 (Mo.App. E.D.1984). And courts have held judgments void for lack of personal jurisdiction. *Houston*, 864 S.W.2d at 430(defendant had neither been served with process in the manner authorized by law nor otherwise entered his appearance); *Bueneman v. Zykan*, 52 S.W.3d 49, 58 (Mo.App. E.D.2001)(insufficient service); *Shapiro v. Brown*, 979 S.W.2d 526, 529 (Mo.App. E.D. 1998)(same). And finally, courts have held judgments void due to lack of notice and as violations of due process. *Simmons v. Megerman*, 742 S.W.2d 202 (Mo.App. W.D. 1987)(lack of notice); *Henningsen v. Indep. Petrochemical Corp.*, 875 S.W.2d 117 (Mo.App. E.D.1994)(absence of notice); Estate of Pittsenbarger, 136 S.W.3d 558 (Mo.App. W.D.2004)(violation of due process).[16]

---

**16.** In accord with these decisions and principles of law, the court held a judgment *not* void in *Weidner v. Anderson*, 174 S.W.3d 672, 679 (Mo.App. S.D.2005). There, the court entered judgment on a counterclaim against the plaintiffs who failed to appear. The record showed that the defendant had mailed the counterclaim and notice of hearing on that counterclaim to the plaintiffs. In holding the judgment not void, the court noted that the trial court acquired personal jurisdiction over the plaintiffs when they filed their petition, and that the mailing of notice and pleading satisfied requirements of due process. The plaintiffs' failure to appear, the court concluded, was due to the plaintiffs' apparent own

Granted, the judgment here is irregular in that the court did not follow procedure. "A judgment procured without complying with the notice and service requirements of the rules of civil procedure is irregular by definition, i.e., it is one achieved in a manner materially contrary to the law's established procedures for the orderly administration of justice." *Lambert v. Holbert,* 172 S.W.3d 894, 898 (Mo. App. S.D.2005); *see also Breckenridge,* 194 S.W.3d at 920–21. But it is also true that the judgment is void, because the court acted in a manner inconsistent with due process. "[A] judgment rendered by a court acting in a manner inconsistent with due process can and should be declared void." *Powell,* 134 S.W.3d at 748. Our Supreme Court has recently reiterated that the power of a state court to exercise authority over a person flows from the court's conformity with due process. *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 253 (Mo. banc 2009). Thus, when a court concludes it lacks personal jurisdiction, "it means simply that the constitutional principle of due process bars it from affecting the rights and interests of a particular person . . . ." *Id.* Similarly here, because the defendants were not provided notice, the constitutional principles of due process bar the court from affecting the rights and interests of the defendants. The judgment is void.

Being void, the judgment is a nullity and not subject to the "reasonable-time" requirements of Rule 74.06. The defendants were entitled to attack the judgment at any time. The circuit court erred in finding that the judgment was merely an irregular judgment and not a void judgment, and that the defendants' motion to set aside was untimely.

In sum, the defendants were not provided notice. The failure to provide notice to the defendants of the trial setting violated the defendants' rights to due process. The defendants did not waive their rights to due process. The judgment is void and must be set aside. The circuit court erred in denying the defendants' motion to set aside. Accordingly, we reverse the judgment of the circuit court and remand the cause with instructions to set aside the July 9, 2007 judgment.

GLENN A. NORTON, P.J., and MARY K. HOFF, J., concur.

---

willful ignorance or neglect. Although also involving a party's neglect, *Weidner,* like the *Gehl, Knapp,* and *Golden* cases discussed ear-

lier, is distinct from our case, because notice was provided.