

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

RAHSALYN C. SCOTT,             )
By and Through Her Next Friend, )
DAMON A. SCOTT, II and       )
DAMON A. SCOTT,             )
              Respondent,  )
                       )
v.                        )   WD84788
                       )
EMERALD K. BORDEN,        )   FILED: July 5, 2022
              Appellant.  )

### Appeal from the Circuit Court of Jackson County
### The Honorable Marco A. Roldan, Judge

### Before Division One: Lisa White Hardwick P.J., and
### Alok Ahuja and Mark D. Pfeiffer, JJ.

In this paternity action, the Circuit Court of Jackson County entered a default judgment granting Damon Scott ("Father") sole legal and physical custody of the child he purportedly shares with Emerald Borden ("Mother"). The circuit court's judgment awarded Mother two hours of supervised visitation per week. Mother appeals, arguing that the circuit court erred in refusing to set aside the default judgment. We reverse because Mother was never properly served with process, and the default judgment entered against her is accordingly void.

## Factual Background

According to the circuit court's default judgment, Mother and Father share a daughter, R.S., who was born in September 2012.

Father's pleadings in the circuit court acknowledged that Mother and R.S. left Missouri and relocated to Harford County, Maryland in February 2020.

On June 18, 2020, Father filed the present paternity action in the Circuit of Jackson County. His Petition listed Mother's and R.S.'s "last known address" as 16908 E. 29th Street South in Independence.

A summons was issued to Mother at the Independence address. On a return of service, the process server stated that, on June 29, 2020, he had completed service by "leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of [Mother] with Dean Witmer – Father, a person of [Mother]'s family over the age of 15 years who permanently resides with [Mother]."

On July 30, 2020, Witmer returned the summons and petition to the circuit court, along with a handwritten affidavit. Witmer's affidavit explained that he had told the process server multiple times that Mother no longer lived at Witmer's Independence residence, nor had she for "quit[e] some time." Nonetheless, the process server left the "papers . . . between [the] front doors of [the] residence" when Witmer refused to accept them.

On October 13, 2020, Father filed a Case Management Statement which indicated he "does not currently have any information regarding [Mother]'s current place of residence or employment."

2

On October 16, 2020, Father requested that the circuit court issue an alias summons to be served on Mother at her purported place of employment, an assisted living center in Whiteford, Maryland. Father requested a second alias summons, for service at the same place of employment in Maryland, on December 14, 2020.

On January 21, 2021, Father filed a further Case Management Statement. The Statement indicated that Mother "was just served on January 15, 2021 and has not filed a responsive pleading." The Statement also asserted that "shortly before this action was filed [Mother] moved to Maryland with the minor child."

On March 13, 2021, Mother filed a *pro se* motion to strike Father's representations that Mother had been served in Maryland on January 15, 2021. Mother's motion stated that, "[a]t no time was [she] ever served with the initial pleadings in this case." Mother's motion asserted that she was at a Baltimore, Maryland hospital with her son the entire day of January 15, and thus could not have been served on that date.

Father filed a response to Mother's motion to strike on March 22. Father's response asserted that his counsel had initially been told by the Harford County Sheriff's Department "that service had been obtained upon [Mother] on January 15, 2021." Father's response admitted, however, that "[d]uring a follow up call to the Harford County Sheriff's Department regarding obtaining a return of service, it was determined the deputy misspoke and *no service had been obtained upon [Mother] in Maryland.*" (Emphasis added.)

Father's January 2021 Case Management Statement had asserted that Mother had moved from Missouri prior to the filing of his paternity action, and that she had "just [been] served [in Maryland] on January 15, 2021." Nevertheless, in his response to Mother's motion to strike Father argued that effective service had been obtained upon Mother in June 2020, when a process server left a copy of the summons and petition with Dean Witmer at his residence in Independence. Despite his claim that Mother had been effectively served by leaving papers with her father in Independence in June 2020, Father's response to the motion to strike noted that, at the time Father filed his petition, Mother "had fled the state with [R.S.] . . . and was . . . staying with friends or family in Maryland." Father's response also speculated, without evidentiary support, that Mother's "father probably forwarded a copy of the paperwork that he received to [Mother], and that is why she refused to accept service from the Harford County Sheriff's Deputy who made numerous attempts to serve her at her place of employment or residence addresses in Maryland."

On April 30, 2021, the circuit court denied Mother's motion to strike without explanation.

Father filed a motion for entry of an interlocutory judgment of paternity on May 18, 2021. The court granted the motion the same day. Remaining issues were tried to the court on July 14, 2021. Only Father and his attorney were present.

The circuit court entered a default judgment against Mother on July 26, 2021. The judgment found that Mother "was served with summons on June 30,

4

2020." The judgment granted Father sole legal and physical custody of R.S., and limited Mother to a maximum of two hours of supervised visitation per week. The judgment also ordered Mother to pay Father $323.00 in monthly child support.

On August 5, 2021, Mother filed a motion to set aside the default judgment, and alternatively for a new trial. Mother sought relief pursuant to Rules 74.05(d) and 74.06(b). In her motion, Mother alleged that she had good cause for her failure to respond to Father's petition. Mother also contended that she had a meritorious defense to Father's requests for custody. Mother alleged that giving Father custody of R.S. was not in the child's best interests due to Father's alleged substance abuse, acts of domestic violence, and sexual abuse of one of Mother's other children. Mother's motion alleged that R.S. "has never had a relationship with [Father]," and that Father "has been out of the home and away from the child since at least 2017." The motion also alleged that the judgment should be set aside because Mother "has never been personally served in this matter."

Father filed a response to Mother's motion to set aside the default judgment on August 13, 2021. Father asserted that he believed, at the time of filing the paternity action, that Mother was residing in Independence with her father; but he admitted that, "[s]ubsequent to the filing of this action, [Father] learned that [Mother] had fled the State of Missouri with the minor child sometime in February of 2020." Father also asserted that Mother "had full knowledge of the filing of this action and its contents, but chose to not actively participate in this litigation," other than filing her motion to strike Father's representations that she had been served.

5

On August 24, 2021, the circuit court denied Mother's motion to set aside the default judgment without explanation. Mother appeals.

**Standard of Review**

Ordinarily, a decision on a motion to set aside a default judgment is reviewed for an abuse of discretion. *In re Marriage of Callahan*, 277 S.W.3d 643, 644 (Mo. 2009) (citing *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 687–88 (Mo. 2007)). "An abuse of discretion occurs when a [circuit] court's ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. 2003). "There is, however, 'a strong preference for deciding cases on the merits' and against resolving litigation by default." *Callahan*, 277 S.W.3d 643, 644 (Mo. 2009) (citation omitted). Consequently, courts have narrower discretion when overruling a motion to set aside a default judgment than when sustaining such a motion. *Id.*

The circuit court's discretion is limited even further in cases involving child custody. *Dozier v. Dozier*, 222 S.W.3d 308, 311-12 (Mo. App. W.D. 2007). "[W]here child custody is concerned, 'strict rules pertaining to the setting aside of [default] judgments are less rigorously applied,'" because "'the welfare of the child becomes paramount.'" *Id.* at 311 (citations omitted). "Because the adversarial process better protects the child's interest in a custody proceeding, default judgments in custody cases are strongly disfavored and a refusal to set aside such a judgment is reviewed

6

with heightened scrutiny." *Cutter-Ascoli v. Ascoli*, 32 S.W.3d 167, 169 (Mo. App. E.D. 2000) (citing *Hinson v. Hinson*, 518 S.W.2d 330, 332 (Mo. App. 1975)).

"'[W]hether a judgment should be vacated because it is void is a question of law that we review de novo; we give no deference to the circuit court's decision.'" *Prof'l Funding Co. v. Bufogle*, 617 S.W.3d 509, 512 (Mo. App. E.D. 2021) (quoting *Kerth v. Polestar Entm't*, 325 S.W.3d 373, 378 (Mo. App. E.D. 2010)).

## Discussion

Mother raises two Points on appeal. In the first, she contends that the circuit court erred in overruling her motion to set aside the default judgment under Rule 74.05(d) because she alleged facts establishing good cause for her failure to timely respond, and a meritorious defense. In her second Point, she argues that the default judgment was void under 74.06(b), because she had not been properly served and the circuit court accordingly never established personal jurisdiction over her. We conclude that the judgment must be reversed because Mother was never properly served with process. We accordingly find it unnecessary to address Mother's first Point.[1]

---

[1] Mother's first Point relies in large part on the record of other cases, and on exhibits which were not before the circuit court when it denied Mother's motion to set aside the default judgment. Relying on these documents, Mother contends that Father has been guilty of serious acts of misconduct which should disqualify him from having custody or unsupervised visitation with R.S. To this point, no court has made factual findings concerning Mother's allegations of misconduct by Father. We would normally not consider, for the first time on appeal, the sort of extra-record and post-decisional materials on which Mother's first Point depends. Given our disposition, facts relating to the parties' fitness to serve as R.S.'s custodians, and concerning the custody arrangement which is in the child's best interests, can be fully developed and decided on remand.

"Proper service of process is a prerequisite to personal jurisdiction." *Killingham v. Killingham*, 530 S.W.3d 633, 635 (Mo. App. E.D. 2017) (citing *Maul v. Maul*, 103 S.W.3d 819, 820 (Mo. App. E.D. 2003)).

> Only by service of process authorized by statute or rule . . . can a court obtain jurisdiction to adjudicate the rights of a defendant. When the requirements for manner of service are not met, a court lacks power to adjudicate. Actual notice is insufficient. Satisfying minimum standards of due process . . . does not obviate the necessity of serving process in the manner prescribed in our statutes and rules.

*Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. 2000) (citations and internal quotation marks omitted).

Under Missouri Supreme Court Rule 54.13, service may be effected upon an individual within the State "by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein . . . ." Rule 54.13(b)(1). In the circuit court, Father argued that service on Dean Witmer, Mother's father, at Witmer's Independence residence in June 2020 was sufficient to satisfy Rule 54.13(b)(1). It was not. Father's own filings in the circuit court asserted that Mother relocated to Maryland in February 2020, months before the attempted service at the Independence address. Further, Father contended in his second Case Management Statement

8

that Mother had "just [been] served" in January 2021 – months *after* the attempt to serve her at her father's residence in Independence.

Finally, Father's action of twice seeking the issuance of alias summonses for service of Mother in Maryland – *after* the purported service in Independence – is inconsistent with his current claim that Mother was properly served by leaving papers with her father. *See, e.g., Springer v. Springer*, 690 S.W.2d 426, 426 (Mo. App. W.D. 1985); *Kennon v. Citizens Mut. Ins. Co.*, 666 S.W.2d 782, 785 (Mo. App. E.D. 1983) ("Plaintiff's order to issue an alias summons constitutes an abandonment of the original service."). Although he had repeatedly contended in the circuit court that Mother had been properly served in June 2020 in Independence, at oral argument Father's counsel conceded that he could not rely on that purported service, given the later issuance of alias summonses at his request.

Father asserted in the circuit court that Mother was aware of the pendency of this action, and that her father "probably forwarded a copy of the paperwork that he received to [Mother]." But even if that were true, "[a]ctual notice is insufficient to confer jurisdiction." *Gabbert v. State*, 636 S.W.3d 194, 196 (Mo. App. W.D. 2021). "[N]o amount of actual notice supplants proper service of process." *Id.*

Father has also asserted that Mother was served with process in Maryland. But despite Mother's repeated assertions that she was never served in Maryland, Father submitted nothing to the circuit court to establish that service was actually effected in Maryland. Generally, where the defendant does not acknowledge that they were served, Rule 54.20(b) requires that out-of-state service be proved by an

9

affidavit of the process server "stating the time, place and manner of such service." Rules 54.20(b)(1), (2).

> "Service of process is a prerequisite to the exercise of personal jurisdiction over a defendant." To prove that the "proper method of service has been followed," a plaintiff must present proof of service in accordance with Rule 54.20. "In the absence of proof of service in accord with the rule, the court lacks the proof established by the Supreme Court as necessary to determine that the court has jurisdiction of the person of the defendant."

*Morris v. Wallach*, 440 S.W.3d 571, 576 (Mo. App. E.D. 2014) (citations omitted); *accord*, *Scholz v. Schenk*, 489 S.W.3d 306, 310 (Mo. App. W.D. 2016). Unless the defendant has consented to jurisdiction, or waived any jurisdictional objection, "proper service itself is inadequate to confer jurisdiction in the absence of the rule mandated proof of that service." *Indus. Personnel Corp. v. Corcoran*, 643 S.W.2d 816, 818 (Mo. App. E.D. 1981).[2]

Besides the lack of any *proof* that Mother was served in Maryland, Father also admitted in the circuit court that, as of March 22, 2021, "no service had been obtained upon [Mother] in Maryland." Father's counsel repeated this concession at oral argument. These concessions defeat any claim that Mother was properly served in Maryland.

The record demonstrates that Mother was not properly served in this action. The circuit court never acquired personal jurisdiction over Mother, and the default

---

[2] At oral argument, Father made clear that he was not contending that Mother had waived any objection to service. We note that, in her only appearance prior to the entry of the default judgment, Mother contested that she had been properly served. Because Mother did not engage in any "overt act constituting a general appearance" by which she "submitt[ed] . . . to the jurisdiction of the court," Mother did not waive her objections to service. *Heineck v. Katz*, 509 S.W.3d 116, 121 (Mo. App. E.D. 2016) (citations omitted).

judgment it entered is void for lack of personal jurisdiction. The circuit court erred in denying Mother's motion to set aside the judgment as void under Rule 74.06(b). Rather than being decided by default, the "best interest [of R.S. is better] served by an adversary hearing" at which appropriate custody arrangements can be litigated. *Hinson v. Hinson*, 518 S.W.2d 330, 333 (Mo. App. 1975); *see also Cutter-Ascoli v. Ascoli*, 32 S.W.3d 167, 169-70 (Mo. App. E.D. 2000).

We note that, after Father filed this paternity action, Mother filed her own lawsuit in Maryland to adjudicate issues concerning custody over R.S. Both the Maryland and Missouri courts concluded that Missouri was the appropriate forum to resolve this custody dispute under the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA"), § 452.700, RSMo *et seq.* On appeal, Mother does not challenge the circuit court's determination that it had authority under the UCCJEA to resolve issues concerning R.S.'s custody. At oral argument, her counsel represented to this Court that Mother had moved back to Jackson County after entry of the default judgment. Mother's counsel stated that, if we reversed the judgment, Mother would not challenge the circuit court's authority to proceed on remand, but would instead submit the merits of the child custody dispute to the circuit court for its prompt resolution.

## Conclusion

Because Mother was not properly served with process, the default judgment entered by the circuit court is void for lack of personal jurisdiction. The judgment is

11

reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

_____

Alok Ahuja, Judge

All concur.